## A. A. Payne v. McCormick Harvesting Machine Company.

(Filed September 5, 1901.)

1. REPLEVIN, PETITON IN—Demurrer. A petition in replevin to recover possession of chattels embraced in a chattel mortgage, for the purpose of enabling the mortgagee to enforce his lien, and which sets out the mortgage and shows by independent averments that the particular property sought to be recovered, is not the property embraced in a prior chattel mortgage covering some of the property embraced in plaintiff's mortgage, is not subject to the objection or demurrer that the petition does not show right of possession in the plaintiff.

2. SEASONS—Judicial Notice of. The courts take judicial notice of the seasons, and the time of planting and harvesting annual crops, and know that a crop of wheat growing in April, 1898, is not the crop harvested in 1899.

3. INSTRUCTIONS. The instructions of the court should clearly and intelligently set forth the law as applicable to the issues and evidence submitted, without being conflicting, contradictory, confusing or misleading.

4. SAME—Not Error When. The giving of an instruction which states a correct proposition of law, but which has no application to the issues involved or proof, will not warrant a reversal of the judgment, unless it is apparent that such instruction was calculated to mislead the jury.

5. REPLEVIN—Defense. Under the general denial in replevin, the defendant may make any defense, which will defeat the plaintiff's claim or right to possession as against the defendant, and under the code great liberality is allowed to such defenses.

6 SAME—Chattel Mortgage. Where the plaintiff claims the right to possession of property by virtue of the lien created by a chattel mortgage, under the general denial the defendant is entitled to show that the mortgage was obtained by fraud or deception, and thus defeat the lien, and consequently the right of possession in the mortgage.

(Syllabus by the court.)

*Error from the District Court of Kingfisher County; before
C. F. Irwin, Trial Judge.*

M. J. Kane, for plaintiff in error.
J. C. Robberts, for defendant in error.

Opinion of the court by

BURFORD, C. J.:    The defendant in error, the McCormick Harvesting Machine company, brought its action against the plaintiff in error, A. A. Payne, to recover the possession of a quantity of wheat stored in a bin on which the Machine company claimed to have a chattel mortgage. Payne answered by a general denial. The cause was tried to a jury and a verdict returned in favor of the company, that it was entitled to the possession of the wheat, and that the value of its interest was $136.18. Payne appealed, and the cause is here for review.

The first error complained of is that the demurrer to the petition should have been sustained. The chattel mortgage under which the Machine company claimed its lien and right to possession, was executed on the 27th day of April, 1898, and embraced the following described chattels:

"One McCormick harvester and binder complete, also all of 80 acres of wheat growing on land described below, the wheat is subject to two chattel mortgages to W. N. Cochran in the sum of $74.00 and $34.50, otherwise clear of incumbrance, and also any and all increase of said stock, so long as any part of said indebtedness or interest thereon, remains unpaid, said property being now in the possession of the undersigned, A. A. Payne, located 3———S. of Kiel on the real estate now in the possession of above as

homestead claim. And also all the crops of every kind, name, nature and description which are now planted, sown, grown, cultivated, harvested, standing or growing during the years A. D. 1897, 1898, 1899, or during either or any of said years and until said debt is fully paid and satisfied, upon the following described real estate, S. W. 1-4 Sec. 24, Tp. 17, R. 9 W., Kingfisher county, O. T."

The petition set out the foregoing provisions of the mortgage, and also made the mortgage an exhibit to the petition. The principle contended for by counsel for Payne is, that the petition and mortgage disclose on the face of the papers that the lien of the Machine company was subject to two prior liens in favor of Cochran, and that the company was not entitled to possession as against the world, until the two prior liens were released or satisfied, and that the petition should have alleged facts showing that the wheat sought to be recovered in this case was not in fact subject to the former and prior liens.

Without passing upon the question of law presented by this contention, we hold that the facts pleaded are not subject to the objection presented. The further allegation is made in the petition that: "Said mortgage covers and includes 500 bushels of wheat raised on above tract and harvested in the year 1899, which said wheat is now in the granary on the premises above described in said county and territory." And it is the crop of wheat raised and harvested in the year 1899 that is the subject of this controversy. The two prior chattel mortgages were liens upon eighty acres of wheat growing on the land in April, 1898. The court takes judicial knowledge of the seasons, and the ordinary time for planting and harvesting annual crops. The

court judicially knows that a wheat crop growing in April, 1898, would in the regular course of the seasons be harvested in the summer of 1898, and that a crop of wheat grown and harvested in the year 1899 could not in the course of nature, be the same crop. Hence the wheat which is the subject of litigation in this action is not the same wheat upon which the two mortgages to Cochran were executed. The reasonable presumption is that Cochran's mortgage has been satisfied from the proceeds of the crop upon which it was a lien. The petition and the exhibit set forth facts which make it apparent that the wheat sought to be replevined was not the wheat upon which the prior mortgages were executed. There was no error in overruling the demurrer upon the grounds suggested.

The next contention is that this demurrer should have been sustained, for the reason that it appears from the facts pleaded that the wheat in controversy had not been sown, and was not in existence at the time the mortgage was executed, or in other words, that a lien cannot be created upon crops to be grown in the future.

The rule contended for has some foundation in those jurisdictions where the effect of a chattel mortgage is to convey the legal title to the mortgagee. But under our laws the mortgagor retains the title and posssssion, and the mortgagee has only a lien to the extent of his interest, and must enforce such lien by foreclosure in one of the ways provided by statute.

Section 3138, Okla. Stat. 1893, provides:

"An agreement may be made to create a lien upon

property not yet acquired by the party agreeing to give the lien, or not yet in existence. · In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

And section 3185 provides that contracts of mortgage shall be subject to the provisions relating to liens. These provisions of our statute were adopted from the laws of Dakota territory, and come to us with a well defined and settled construction. The same question was before the supreme court of that territory in the case of *Grand Forks Nat. Bank v. Minneapolis and N. Elevator Co.,* 43 N. W. 806; and in an able and exhaustive opinion, Mr. Chief Justice Tripp reviewed the whole field, covering this subject, and there said:

"The equity rule in regard to mortgages was adopted by our codifiers and has been embodied in our statute. The mortgage no longer conveys title to property either real or personal, but is a mere lien thereon."

And after quoting the section of the statute hereinbefore referred to, he further says:

"By this section not only is an agreement to create a lien upon property not yet in existence valid, but the lien contracted for attaches the moment that the interests of the party himself attaches. There is no interim of time for hostile interests to intervene. There is no delay provided for within which the lienor is required to obtain a new or more formal instrument or contract of lien, or within which he must obtain from the other party a ratification of the original agreement or reduce the property to actual possession under the contract already made. Under the statute the original contract *ipso facto* immediately on its ac-

quirement or creation of such property, awakens and brings into life the lien agreed upon. As between the parties themselves, no further action is necessary or required to be done."

These observations apply of course to mortgages which have been properly executed and recorded as required by law.

In *Merchants Nat. Bank v. Mann*, 51 N. W. 946, it was held that a chattel mortgage which covers all crops to be grown during the years 1888 and 1889, and each and every succeeding year until the debt is fully paid, was a valid mortgage upon the crops raised by the mortgagor in 1890. This is a stronger case than the one under consideration, for here the object is to enforce the lien against the crop raised in 1899, and the mortgage specifically enumerated the crops to be raised in that year.

We think the petition stated a good cause of action, and there was no error in overruling the demurrer.

On the trial of the cause the defendant submitted two defenses to the right of the plaintiff to recover the property. One defense went to the right of recovery of the debt which the mortgage was executed to secure, and the other to the validity of the lien created by the mortgage. The first defense was that the defendant had purchased a harvester from the plaintiff in 1894, and that it was guaranteed to do good and satisfactory work; that the machine was defective and improperly constructed, and would not do good work; that the company was notified, but kept promising from time to time to make the needed repairs and

changes, until the year 1898, when the new note was given. That at the time the new note was executed, and as an inducement to get the defendant to execute the new note and mortgage, plaintiff's agent agreed that if the defendant would execute a new note and secure the same by a chattel mortgage, the Machine company would put the machine in good condition, and make it do satisfactory work in time for the following harvest, and that relying on these promises he signed the note and executed the mortgage, but that the plaintiff had entirely failed to comply with said agreement.    There was evidence tending to support this defense, although it was contradicted in part.

The other defense which was offered by the defendant but was by the court excluded, was to the effect that the plaintiff's agent, who obtained the note and mortgage, had fraudulently procured him to execute a mortgage upon the crops for 1899, when he in fact only intended to mortgage the growing wheat crop of 1898; that he was unable to read, and directed the plaintiff's agent what property to describe in the mortgage, and that said agent incorporated other property in the mortgage without his knowledge, and then fraudulently misread the mortgage to the defendant, and thus obtained his signature by said deception and fraud

The first defense went to the right of recovery on the note, and consequently to defeat any lien.    The second defense was intended to defeat the lien only.    It will be borne in mind that this was not an action to recover on the debt, but was an action in replevin to recover possession of the property for the purpose of enabling the plaintiff to foreclose its mortgage by a sale of the mortgaged property.    The court permitted but one defense to go to the jury, and the

instructions should have been confined to the law as applicable to the evidence on the issues made. The question of whether the parties had failed to comply with the terms of the written contract under which the machine was originally sold was not involved, except as incidental to, and explanatory of, the reasons for any subsequent or new agreement. The plaintiff was entitled to recover the mortgaged property unless the defendant had established the new agreement, and the failure to comply with it by the plaintiff, as contended for by him, and as it was claimed was entered into as an inducement to the giving of the note and mortgage.

It is contended that the instructions given by the court were not applicable to the issues, were contradictory, misleading and confusing.

Instruction No. 1 embraces the proposition that if the plaintiff sold the machine in question to the defendant and agreed at the time if the machine did not do good and satisfactory work they would take it back, or make it all right, that no obligation would rest on the plaintiff to take the machine back unless called upon to do so within a reasonable time after sale. No objection is found to the law as stated in this instruction, but the issues required no such instruction, and it was improper to give it. It is error to give an instruction which has no application to the issues, although it embodies a correct principle of law. Yet a cause will not be reversed for the giving of such an instruction, unless it is apparent that it probably misled or confused the jury to the prejudice of the complaining party. This instruction does not appear to be of that character, or to have had that effect.

The second instruction embodied the law as applicable to the issues made by the pleadings and evidence. In it the jury were told that if the defendant bought the machine in 1894, and that the machine was warranted to do good and satisfactory work, and the defendant kept and used the machine to cut his grain in 1894, 1897 and 1898, and in the year 1898, the defendant gave the note and mortgage in question in payment of balance of the purchase price, such giving of the note and mortgage would constitute a waiver of any defects in the machine, unless the plaintiff, in order to induce the defendant to sign such note, promised and agreed to put the machine in good order and make it do good work and that the burden of proof was on the defendant to show such promise and agreement, and if he had failed to do this, the plaintiff was entitled to a verdict.

The third instruction was to the effect that if the plaintiff at the time of the execution of the note and mortgage, in order to induce the defendant to sign the same, agreed that it would remedy any defects in the machine and make it do good work, and that the plaintiff failed to perform such agreement and remedy any such defects, then the plaintiff could not recover. This instruction was as favorable to the defendant as the evidence would justify, and is unobjectionable.

The fourth instruction is open to criticism. It is as follows:

"If you believe from the evidence that the agreement between the plaintiff and defendant was that the defendant was not to keep the machine unless it complied with all the conditions of the sale, and that the defendant was to have

the privilege of returning said machine if it did not so comply with the conditions of said sale, then, if the defendant was not satisfied with the machine, it was his duty to return it within a resonable time, and if he did not do so, he will be held to have elected to keep the machine and pay for it at the agreed price."

This instruction ignores the only defense that was made in the case, and is contradictory of the law as stated in instruction number three. There was no contention or claim that the defendant ever returned or offered to return the machine. He only demanded that it be put in working order, and this the Machine company has made efforts to do, and the jury, in this instruction, are told that if he failed to return it within a reasonable time, he was liable to pay the full agreed price for it, and this would be so under this instruction, notwithstanding the mortgage was executed upon the express condition and consideration that the Machine company would repair the machine before the next harvest, which there is no claim that they attempted to do. We think this instruction was calculated to mislead and confuse the jury and was, therefore, prejudical to the defendant.

Instruction No. 6 embraces the principle of estoppel, and is based upon the proposition that if the defendant used the machine through three harvests, then gave the new note and mortgage voluntarily, and without any new promise on the part of the plaintiff, and subsequently paid $30 on the note, then it was too late to claim any benefit from defects in the machine.

The objection to this instruction is not well founded.

It was probably necessary to advise the jury on this question, in order to prevent them from giving an improper effect to some of the evidence which was admitted.    It could at least do no harm, and was evidently precautionary.

Instruction No. 8 is as follows:

"You are instructed that if you find from the evidence that the defendant, Payne, purchased the machine in controversy from the plaintiff in the year 1894, and kept and used said machine from time to time until 1898, and then renewed his promise to pay for said machine, and did pay $30 on said machine in the fall of 1898, such fact would be a strong circumstance tending to show that the machine complied with the conditions of the sale, and in arriving at a verdict in this case, it would be your duty to take such facts into consideraton."

The court here invades the province of the jury and expresses an opinion as to the weight of the testimony.  As to whether the facts and circumstances enumerated constituted a strong circumstance or a weak circumstance, was alone for the jury to determine.  The jury are the sole judges of the weight of the testimony, and the court cannot indicate any opinion as to its weight.  The facts enumerated if found to exist, were proper for the jury to take into consideration in determining the question as to whether the machine had been of the kind and character contemplated in the contract of sale, and the court should have gone no further in instructing the jury than to direct them to consider such facts in that connection.    (11 Encyc. P. & P. 97, and authorities there cited.)

Instruction No. 9 is a proper exposition of the law requiring good faith of each party in carrying out the terms

of a contract, and charges the jury that failure or neglect of the defendant to operate the machine with proper care and usage, could not be made the basis for a claim of defects in the machine.

The last instruction, numbered ten, states the law correctly so far as it goes, and also ignores the specific defense made, that the machine company had entered into a new promise at the time the note was executed.

While it is a general rule that all of the instructions must be considered as a whole and construed together and no particular one singled out to the exclusion of another, yet the instructions as a whole must be consistent and harmonious, and where two instructions contain inconsistent propositions, the cause will be reversed, for the reason that the court is unable to tell which the jury followed and which they ignored.

It is urgently contended by counsel for defendant in error that the instructions given in the cause cannot be considered by this court, for the reason that it does not appear that they were ever filed with the clerk, so as to constitute them a part of the record. A number of Indiana cases are cited in support of this contention. If the case was here on a transcript, the point would be well taken. In Indiana the only means of presenting a case to the supreme court on appeal is by a transcript of the record below and as a transcript can only embrace proceedings which are properly parts of the record in the trial court, a failure to file the instructions or have them made part of the record by bill of exceptions, will be fatal. But our procedure by case-made takes the place of the record, bill

of exceptions and transcript, and when it is recited in the case-made that certain instructions were given on the trial of the cause, and the instructions are set out, such statement in the case-made is conclusive, and we cannot go behind this record to inquire into the facts as to whether they were ever properly made part of the record below.

The plaintiff in error complains of the action of the trial court in excluding the evidence in support of his second defense. Under our code, the gist of the action of replevin is the wrongful detention by the defendant as against the plaintiff, and under a general denial the defendant may prove anything that will tend to show that he does not wrongfully detain the property as against the plaintiff. He may show that he does not wrongfully detain it by showing that he rightfully detains it, or by showing that the plaintiff has no right to the possession. Great liberality is allowed the defense under the general denial. (*Yandle v. Cram,* 13 Kan. 344; *Wilson v. Fuller,* 9 Kan. 177; *Bailey v. Bayne,* 20 Kans. 657; *Kennett v. Fickel,* 41 Kan. 211; *Deford v. Hutchison,* 45 Kan. 318.)

The plaintiff alleged that it was entitled to the possession of the property in question by virtue of a lien created by a certain chattel mortgage executed by the defendant. The general denial put in issue the question as to its right to possession under and by virtue of the mortgage. If the mortgage was void, invalid or fraudulent, then the mortgagee had no lien; if it had no lien, it was not entitled to possession. Fraud vitiates and destroys all that originates through its operation. If the mortgage was fraudulently obtained, then proof of such fact would operate to defeat the lien,

and consequently the right of the plaintiff to the possession of the property described in the mortgage. The defendant offered evidence for the purpose of showing that the plaintiff's agent who drew up the mortgage was directed by the defendant to include in the mortgage the harvester and binder, and eighty acres of growing wheat, and that he did not authorize any other property to be placed in the mortgage, that the agent drew up the mortgage and read it over to him, and as read to him the mortgage did not include the crop of 1899, and he did not intend to mortgage such crop; that he was unable to read the mortgage, and did not know that it included the future crops. If these facts had been established, it would have defeated the mortgage and lien, and would have been a complete defense to plaintiff's claim of right of possession. Under the authorities above cited, this defense was proper to be made under the general denial, and it was error to exclude it.

The cause is reversed at the costs of defendant in error with directions to the district court to grant a new trial, and for further proceedings in accordance with this opinion.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.