# FITCH v. GREEN.

No. 2736.   Opinion Filed June 20, 1913.

On Rehearing July 22, 1913.

(134 Pac. 34.)

1.   TROVER AND CONVERSION.—Recovery of Personal Property—
Expenses.   Evidence of value of time and reasonableness of ex-
penditure of money in pursuit of property is necessary to warrant
recovery therefor, under section 2642, St. Okla. 1890 (section 2875,
Rev. Laws 1910).

2.   SAME—Damages.   Where, in an action for damages for conversion
of property, the court, over objection, admits evidence of payment
of attorney's fees as expenses in pursuit of such property without
evidence of any service of attorney in such pursuit, where the
other items of expense proven are not shown to be proper in
amount or in reason therefor, where there is no definite proof of
amount of time nor proof of value of same expended in such pur-
suit, and where all such items of expense are treated in the trial
as elements of damage, under section 2642, St. Okla. 1890 (Rev.
Laws 1910, sec. 2875), and not of exemplary damages also claimed,
it is error for the court to so instruct the jury as to permit recov-
ery of all such items proven, and more, as expenses incurred in pur-
suit of such property.

3.   NEW TRIAL—Excessive Damages.   Where the verdict of the jury
is for a gross sum, in excess of the combined value of the property
converted and the time and money expended in its pursuit, so that
it cannot be known what portion of the same was given as actual
and what portion as exemplary damages, where there was not suffi-
cient evidence of value and reasonableness of time nor of reason-
ableness of expenditure of money in pursuit of property, under sec-
tion 2642, St. Okla. 1890 (Rev. Laws 1910, sec. 2875), but proof of
amounts from which the jury may have improperly found plaintiff
entitled to recover a large sum as actual damages on account of
such value of time and amount of money, under instructions ap-
parently recognizing the evidence as sufficient to warrant such a
recovery on this account, the verdict should be set aside, and a new
trial granted.

4.   CHATTEL MORTGAGES—Action by Mortgagor—Foreclosure—
Purchase by Mortgagee—Burden of Proof.   In an action by mort-
gagor for conversion, the burden of proof is upon the chattel mort-
gagee purchasing from himself at a foreclosure sale, under sections
3536-3540, St. Okla. 1890, to show strict compliance with sections
3537 and 3538, supra (sections 4027 and 4028, Rev. Laws 1910), and
that the sale was fairly conducted in every respect.

5.   SAME.   Where a chattel mortgagee, claiming to deem himself in-
secure upon probable cause, and entitled to foreclosure under pro-
vision of mortgage in this regard before debt would be due in usual

course, takes the two animals mortgaged, in absence of mortgagor, from their situs to his home town thirteen miles away in same county, posts notices, without correctly stating the nature of the default, in five public places, not shown to fulfill the purpose of the statutes in that regard, within such town and none elsewhere, sells the property to himself, without actual notice to the mortgagor, for $75, which is $6.75 less than mortgage indebtedness, and a few months later, after putting property in better condition for sale, sells same for $180, on a year's time, without interest, plus another animal taken in trade and worth $30 or $40, the evidence for the mortgagee being that the animals were worth from $50 to $75, and the evidence for the mortgagor being that they were worth from $190 to' $220, when so taken, the foreclosure sale is invalid.

## On Rehearing.

6. **APPEAL AND ERROR**—Modification of Judgment. Where a case is reversed because plaintiff may have recovered a certain amount, allowed by erroneous instruction, in excess of amount to which he was entitled, and where, upon petition for rehearing, he offers to remit such excess amount, the judgment may be ordered reformed so as to eliminate such excess amount and thus reduce amount of the judgment to the amount plaintiff was entitled to recover, and the case may be affirmed as to such remaining amount of the judgment.

7. **COSTS**—Costs on Appeal—Reversal in Part. Section 4458, St. Okla. 1893 (section 5261, Rev. Laws 1910), requires that costs shall be equally divided between the parties, when case is reversed in part and affirmed in part.

(Syllabus by Thacker, C.)

*Error from District Court, Kingfisher County;*
*A. H. Huston, Judge.*

Action by Richard Green against Harry C. Fitch. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

*Bradley & Bradley,* for plaintiff in error.

*D. K. Cunningham, L. R. Weiss,* and *Dan W. Lewis,* for defendant in error.

Opinion by THACKER, C. In the opinion plaintiff in error will be designated as defendant and defendant in error as plaintiff, in accord with their respective titles in the trial court.

Fitch v. Green.

On or about June 26, 1909, plaintiff borrowed of defendant $10, according to his testimony, or $13, according to defendant's testimony. In consideration of this loan and, according to defendant's testimony, which is denied by plaintiff, an agreed charge of $1.75 to cover notary and filing fees and defendant's services in drawing note and mortgage, plaintiff executed to defendant his note for $14.75, with interest thereon at 10 per cent. per annum from date, payable September 24, 1909, and his chattel mortgage, as security therefor, upon a bay horse and a brown mare.

The mortgage contains the following provision:

"It is hereby agreed that, if default be made in payment of said note, or any part thereof, interest thereon, or if any attempt be made to remove or dispose of said property, or at any time said second party shall deem himself insecure, said second party or his agent are hereby authorized, without notice, to declare and treat all or any of said notes and the indebtedness hereby secured as then fully matured, anything in the said note to the contrary notwithstanding, and to enter upon the premises where the said property may be, and remove and sell same at public sale, with notice provided by law, and said second party may become purchaser of said property at such sale, and out of the proceeds retain the amount then owing on said notes, and the interest thereon, and $15 attorney's fees, and such other expenses as may have been incurred, rendering the first party the surplus, if any there be, after the whole of said note and interest thereon shall have been paid, with charges aforesaid"

—the defendant being the "second party" to whom reference is made in this provision. Plaintiff executed an affidavit on the back of this mortgage, as follows:

"That he is the lawful owner of the property described and included in the within instrument of writing, and that he has full power to sell or mortgage the same and give clear title, and that there are no chattel mortgages or liens upon said property. That each and every representation made in said mortgage are true and have been made for the purpose of securing a loan of money, said loan being based upon the values herein represented."

The mortgage, however, does not recite the value of any of the property described.

On January 5, 1909, plaintiff gave Emma Williams a prior mortgage on said brown mare and a bay horse named "Tom" to secure a note to her for $67, due November 1, 1909, with interest at 10 per cent. per annum after maturity; but he testified that he informed the defendant of this prior mortgage at the time he gave the one of June 26, 1909, and further testified that the bay horse (worth $100) in the Williams mortgage was his own and is the one involved in this action, but the bay horse (worth $40 or $50) in defendant's mortgage was a horse owned by Frank Johnson and mortgaged with the owner's permission, in consideration of which he turned over to Johnson $5 of the money he borrowed from defendant, and that he did not read nor hear read the affidavit he signed as it in fact reads, although he admits hearing what he understood as a different reading of same. The defendant testified he knew nothing about the Williams mortgage, and that plaintiff, before making the said affidavit, informed him orally that there was no other mortgage, and the property was clear, also that he knew nothing about the Johnson horse being the one that was included in the mortgage. About August 15 or 16, 1909, while plaintiff was away from home and at work at Enid, Okla., defendant went to his home about six miles east of Dover and about thirteen miles southeast of Hennessey and took the brown mare described in each of the two mortgages and the bay horse described in the Williams mortgage, which he claims, upon apparently good reason, to have thought was the same that was described in his own mortgage, although he examined the animals described in his own mortgage at the time he took the same, and when he took the property would have taken the Johnson horse instead of the one he did from the same pasture but for the information that the one he got, and not it, was the plaintiff's horse.

Defendant testified that about six weeks after taking the mortgage of June 26, 1909, he learned for the first time of the Williams mortgage, and, feeling himself insecure because of the false affidavit made by plaintiff to the effect there was no mortgage prior to his own, contracted to purchase the Williams mortgage for his own protection, took the property under both mort-

gages, immediately afterwards consummated his purchase, and paid $60 for the Williams mortgage, and proceeded to advertise and sell the property, under section 3537, St. Okla. 1890 (section 4027, Rev. Laws 1910), to satisfy both debts, aggregating $81.75.

The notice of sale in respect to the mortgage of June 26, 1909, names defendant as mortgagee, and recites that the mortgage is "to secure the payment of the sum of $14.75, and upon which there is now due the sum of $14.75, and feeding two horses and going after and doctoring said mare, default having been made in the payment of said sum, and no suit or other proceeding at law having been instituted to recover said debt or any part thereof, therefore, I will sell the property therein described, viz.: * * *" The only reference to the Williams mortgage in this notice is as follows:

"The above mortgage is a second mortgage on said horses, the proceeds of the sale will apply on a prior mortgage given by Rich Green to Emma Williams for $67.00 dated Jan. 5, 1909, said mortgage has been assigned and is now owned by said Fitch, the balance, if any, will apply on the $14.75 mortgage."

Defendant, having posted these notices in five public places in the town of Hennessey, sold the property on August 28, 1909, to himself for $75; he being the highest of several bidders.

The first or second day after defendant took the property from plaintiff's home, plaintiff in the meantime having learned of the fact and returned home, plaintiff procured a deposit of $81.50 to be made in a bank at Dover, and caused defendant to be phoned that the money was there for him when the notes became due, and demanding a return of the animals to the pasture from which they were taken; but defendant refused to comply with this demand. About three or four days later, and during the same week in which the animals were taken by defendant, plaintiff, through George Green, his neighbor, made another attempt to get the animals from defendant; but the testimony as to what occurred in this attempt, as may be said of much of the testimony throughout the case, was very conflicting. George Green in effect testified that, acting for plaintiff, he went to see

defendant at Henessey to pay him what plaintiff owed him, and told him he would put up $81.50 he had in bank at Dover, would make the other quarter claimed by defendant good, and would give him $10 additional to cover expenses, if defendant would surrender the animals to plaintiff, which defendant refused, with the statement that there were expenses to be paid, and it would take $105 or $110 to get the animals; but defendant testified that George Green merely asked him if the notes did not amount to about $80, and, upon being informed that they amounted to $81.75, said he had the money in the Dover Bank, from which defendant might draw in the fall when the notes became due, and asked defendant to let him take the team, stating in that connection that if plaintiff never paid him he would just keep the animals, which proposition defendant declined, and informed George Green he could in no event turn the animals over to him without authority from plaintiff.

About September 1, 1909, plaintiff, with the money at hand, offered to tender and commenced to have counted out to defendant $81.75 for the animals; but defendant informed him that he would not accept it. Here, again, the testimony is very conflicting, though both agree that defendant would not accept the tender, and it seems reasonably certain that defendant would not have accepted any proper tender at this time. The evidence on behalf of plaintiff tends to show that he was at the time ignorant of any notice of sale, or any sale thereunder, and that, although defendant in refusing to accept the tender or surrender the animals stated that he had gotten them according to law, nothing was said in that conversation about any purchase or foreclosure proceeding; but defendant testified that he then informed plaintiff of his purchase at the foreclosure sale. Some time in the fall of 1909, after defendant had gotten the animals in better flesh and appearance, and, according to testimony in his behalf, had cured a swollen leg on the mare, the existence of which plaintiff denied, he sold the bay horse for $85, on a year's time, and the brown mare for $95, on a year's time, plus another mare taken in trade and worth $30 or $40. The evidence on behalf of plaintiff tends to show the

bay horse involved in this case worth from $80 at least to $100 at most, and the brown mare worth from $110 at least to $150 at most; but the testimony on behalf of defendant places the value of these animals at from $25 apiece to $75 for the two.

Defendant claimed $32 as expenses of foreclosure of the mortgage. The court, in instructing the jury, submitted that plaintiff claimed damages in the value of the animals taken and converted by defendant in the sum of $102.75, after deducting the mortgage indebtedness, which amounted to $81.75, and for the sum of $100, as expenses in pursuit of said property, together with $1,000, as exemplary damages upon the ground of malice in defendant in taking and converting same; and, as the measure of plaintiff's damages, further instructed:

"The measure of his damages will be the reasonable value of the property taken at the time it was taken, together with interest thereon at the rate of 6 per cent. per annum from the time it was taken, together with all reasonable expense to which you may find he has been put in pursuit of the animals, less the mortgage indebtedness, and if you further find that defendant acted maliciously in seizing said property, without reasonable cause for so doing or having reason to feel himself insecure, then you may add exemplary damages, by way of example to punish the defendant for acting maliciously and oppressively. The amount of such exemplary damages must be fixed by yourselves, after taking into consideration all the evidence in the case."

It appears that, in finding and returning a verdict for $565 in favor of the plaintiff, the jury found exemplary damages in additional to actual damages; but the verdict does not disclose the items of each, and it is impossible for this court to know what amount was given on account of either of the three distinct grounds upon which these different items were claimed. That the evidence was sufficient to sustain a verdict for both actual and exemplary damages seems indisputable; but, in view of the state of the evidence in this regard, there appears to be reversible error in the submission to the jury of the question of plaintiff's right to recover "fair compensation for the time and money properly expended in pursuit of the property," under section 2642, St. Okla. 1890 (section 2875, Rev. Laws 1910),

certainly in the submission so as to allow the recovery of $50 as attorney's fees as such compensation. That such compensation might be recovered, upon proper proof in a case like this, is clear; but was there any evidence in this regard upon which such a verdict can be sustained in view of the fact that the court did not eliminate from the consideration of the jury certain items of expense clearly not admissible, over objection of defendant, though proven by plaintiff as a part of such compensation?

The evidence wholly fails to show how much time, or any definite period of time, plaintiff expended in pursuit of the property, and the only evidence as to the amount of damages sustained by reason of loss of time was that he had received $1.75 per day at Enid in the work he was doing before commencing such pursuit. It does not appear whether he would or could have continued that work if defendant had not taken the property, nor, if so, whether he would have continued to receive the same compensation therefor, nor does it otherwise appear what his time given to the pursuit of the property was reasonably worth. He testified that he made two trips himself to Hennessey to get the property, and hired and paid one Wilson $2 to go up there. He further testified he paid George Green $2 for his trip up there and $6 for borrowing the $81.50 for his use in discharging the mortgage indebtedness and getting the property back, and also paid one Dunegan $5 for his trip with plaintiff to see defendant at Hennessey; but the necessity or reasonableness of same does not sufficiently appear.

He was then questioned, and answered as follows:

"Q. Well, what other expenses were you to in trying to get this team back, besides what you have stated? A. Well, I paid you all $50. Q. Paid the attorneys $50? A. Yes, sir; my attorneys. (Objected to as not a proper measure of damages.)

"By the Court: It may stand now; I will give the jury the measure of damages in the instructions."

Plaintiff then testified that he did not think of any other expenses in trying to get the property back. The evidence does not disclose what, if any, part counsel for plaintiff took in the effort to recover the property, nor the reason therefor; and we

strongly suspect that the $50 paid them was for services in the instant case rather than for services in trying to get the property back.

That plaintiff was entitled, upon making the requisite proof, to "a fair compensation for the time and money expended in pursuit of the property" is clear; but he failed to make such proof, and the jury may have thought it proper to include all the aforesaid items of expense, with a liberal allowance for time in pursuit at $1.75 per day so as to have aggregated the limit of $100, imposed by the instructions, as reimbursement for time and money expended in pursuit of the property. It was necessary for him to have shown that the money expended by him was properly expended, and this required of him not only proof of apparent reasonable necessity for expenditure but proof that the amount was reasonable. None of this evidence was offered nor treated in the trial as an element of or as relating to punitive damages; and, having apparently been offered, received, and treated throughout the trial as elements of plaintiff's expenditures in pursuit of the property, we deem it unnecessary to consider it in any other aspect. The instructions' in this respect appear to have authorized recovery of $100 as expense money; and this seems error. See case of *Guthrie v. Swan,* 3 Okla. 116, 41 Pac. 84; s. c., 6 Okla. 423, 41 Pac. 84; *Payne v. McCormick H. M. Co.,* 11 Okla. 318, 66 Pac. 287. As more directly in point see 38 Cyc. 1623-1625.

The foregoing views would perhaps seem to make it unnecessary to consider any other specification of error; but, assuming the probability of another trial of this case, we deem it proper to say that no other reversible error appears in the record, although some of the instructions of which defendant complains may, perhaps, be subject to some slight criticisms in other respects.

The sixth instruction given by the court reads as follows:

"If, after the defendant seized the horses and took them in his possession, you find from a preponderance of the evidence that the plaintiff, or any authorized person in his behalf, tendered to the defendant before the property was sold all sums of money due to him on said mortgages, including a reasonable

expense in taking and keeping the horses, if you find that he took them in good faith, then the defendant would have had no right to proceed with the mortgage sale, and it was his duty to deliver them to the plaintiff or his authorized agent, and he must be held liable to the plaintiff for the reasonable value of the horses. If you find that the defendant had no mortgage on the brown horse at the time he seized it, then he would have no authority to seize it, and he would be bound to account to the plaintiff for its full value."

There does not appear to have been any evidence of a sufficient tender or its equivalent in law, prior to the public sale at which defendant purchased the property in question on August 28, 1909, and, but for the fact, found in the amount of the verdict, that the jury found in favor of plaintiff upon another proposition or theory in effect requiring the same verdict as to actual damages as required in effect by this instruction, and the further fact that this public sale appears to have been invalid as against plaintiff's demands, this instruction would perhaps present reversible error.

However, in a case like this, where the mortgagee, within six or seven weeks after the execution of the note and mortgage and about equally as long before the same would have matured in the usual course, takes the property from its proper *situs* about thirteen miles from his home town, in the absence of plaintiff, and thereupon, without actual notice to plaintiff or posting in community from which property was taken, but upon notices not posted outside of the limits of his home town, not shown to be posted properly in their relation to each other, to the people of said town, or to the people of the county beyond the limits of said town, sells the same to himself at a price which appears to be grossly inadequate and may be said, at least, not to be a fair value, the rule placing upon him the burden of proof of regularity in procedure and fairness in conduct applies with peculiar force.

Each of the mortgages expressly authorizes the mortgagee to purchase at a foreclosure sale, and section 3539, St. Okla. 1890 (section 4029, Rev. Laws 1910) also provides that a "mortgagee, his assigns, or any other person may in good faith become a

purchaser of the property sold." However, in such cases, the validity of the sale must be tested by the rule as laid down in 7 Cyc. 115, where it is said:

"Where the mortgagee himself purchases at the sale the burden is upon him to show that the sale was regularly and fairly conducted in every particular, and that an adequate price was paid for the goods sold; and if he cannot sustain this burden the sale will be set aside at the election of the mortgagor."

Section 3537, St. Okla. 1890 (section 4027, Rev. Laws 1910), expressly requires the notice of sale in such foreclosure proceeding to state: "The nature of the default and the amount claimed to be due thereon at the date of the notice." By "nature" is meant "sum of qualities and attributes which make a thing what it is, as distinct from others." Webster's Dictionary; *State v. Murphy,* 23 Nev. 390, 48 Pac. 628, 629. "The nature of the default" in the instant case includes those qualities and attributes which make it distinct from other characters of default; and these mortgages were susceptible of different characters or natures of default.

Defendant claimed default in this case, not because the indebtedness in due course under the terms of the mortgage was due, nor because of any attempt to remove or dispose of the property by the mortgagor, for which provision was made in the mortgage, but because he deemed himself insecure upon probable cause, and elected before the indebtedness would become due in the usual course to treat the same as due under the provisions of the mortgage in this regard. The nature of the default in the mortgage made direct to defendant, as stated in the notice, is that $14.75 "and feeding two horses and doctoring said mare" was then due, and default had been made in the payment of said sum; but the nature of the default in the Emma Williams mortgage, purchased by defendant about the time he took the property, is not stated. The only reference in the notice to the Emma Williams mortgage, which was for $67, due November 1, 1909, was as hereinbefore stated. It cannot be said that this notice correctly and fully states the nature of the default relied upon by defendant in this case, and it follows that he has not strictly complied with the requirements of the statute

in this regard. Section 3538, St. Okla. 1890 (section 4028, Rev. Laws 1910), reads:

"Such notice shall be posted in five public places in the county where the property is to be sold, at least ten days before the time therein specified for such sale."

The purpose of this statute is to give notice to all interested persons and as large a number of persons in the county who would likely desire to purchase as reasonably may be done and as fairly may be required, under all the facts in the case, and to this end the statute clearly contemplates the posting of such notices at five distinctly, and reasonably widely, separated public places in the county. And, ordinarily, one of the notices should be posted in or with due regard to the community in which the property had its proper *situs* when taken. For some of the reasons in favor of this rule, see 7 Cyc. 107 and 110, and cases there cited.

The posting of the notices should certainly be with due regard to the aforesaid purpose of the statutes, and the burden of proof was upon the defendant to show the relationship of the notices in the respect indicated to each other in the town in which they were posted and the fitness of the places of posting, in respect to opportunities to be read by a reasonable number of the people of the county, from whom bids might reasonably have been expected, and also in respect to opportunity to be read by the mortgagor.

This statute and the rule in respect to burden of proof in such cases required of defendant something more than mere proof that one notice was posted on a furniture store, one right across the road south, one at a feed yard on the south part of main street, one in front of Little's bakery, one notice on a telephone post, and another on a feed yard just a block north of there, all in the town of Hennessey, and in our opinion proof does not show a valid sale, under the rule requiring the defendant to show strict compliance with the statutes.

It follows from what has been said that the error in the instruction now under consideration was harmless, and there is another aspect of the case in which this error would seem

to have been harmless. Under the instruction of the court, the jury could not have found, as they did find, exemplary damages in favor of the plaintiff, unless they had found that defendant took the property without probable cause and in bad faith in the first instance, and, this being true, it was not material to plaintiff's right of recovery on either item of his damages to ascertain whether a tender of the undue indebtedness to him had been made by plaintiff.

For reasons stated, in discussing the first questions of error discussed in this opinion, however, the case should be reversed and remanded, with directions to grant a new trial.

By the Court: It is so ordered.

---

## ON REHEARING.

PER CURIAM. The original opinion shows that this case should be affirmed, but for the fact that, under the instructions of the trial court, plaintiff may have recovered an item of $100, claimed without support in the evidence, and on petition for rehearing plaintiff offers to remit the sum of $100, and asks that the judgment be modified and affirmed so as to stand for the sum of $465, instead of the sum of $565, for which it was entered, which offer to remit destroys the reason and obviates the necessity for reversal. The judgment of the trial court is therefore ordered reformed, so as to reduce the principal for which the same was given from the sum of $565 to the sum of $465, and the said judgment is affirmed for the said sum of $465, with lawful interest thereon.

Section 4458, St. Okla. 1893 (section 5261, Rev. Laws 1910), reads:

"When a judgment or final order is reversed, the plaintiff in error shall recover his costs, including the costs of the transcript of the proceedings, or case-made, filed with the petition in error; and, when reversed in part and affirmed in part, costs shall be equally divided between the parties."

In *Mullen et al. v. Robinson et al.,* 30 Okla. 527, 120 Pac. 1099, it is suggested that, where an appeal is not alone upon the question requiring a reversal, but for a *remittitur,* the reasons which might be urged in favor of taxing all the costs against defendant in error, where the appeal is alone upon such question, do not exist.

We are of opinion that the costs of appeal should be divided between the parties to this action.

By the Court:   It is so ordered.