## HELSEL v. FLETCHER.

No. 12835—Opinion Filed Feb. 12, 1914.

Rehearing Denied April 15, 1924.

1. **Animals—Right of Property in Cats—Liability for Injuries to Cats.**

Under the law of this state, cats are not made subjects of larceny, but the owners thereof have such an interest as will authorize the maintenance of civil proceedings for their recovery, and for the willful destruction of, or for damages thereto.

2. **Same—Right of Owners of Chickens to Kill Depredating Cats.**

Owners and breeders of chickens, who are annoyed, and who sustain loss to their flocks by reason of the depredation of chicken eating or chicken stealing cats are justified in killing such cats when found lurking about or roaming over the premises where chickens are kept.

3. **Appeal and Error — Reversal for Inconsistent Instructions.**

The instructions as a whole must be consistent and harmonious, and where two instructions contain inconsistent propositions, the case will be reversed for the reason that the court is unable to tell which the jury follows and which they ignore.

4. **Trial—Instructions—Necessity for Covering Issues.**

It is the duty of the court to give proper instructions substantially covering the issues, and evidence produced at the trial of the case, and it is fundamental error to fail to do so.

(Syllabus by Jones, C.)

Commissioners' Opinion Division No. 3.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Clay A. Helsel against Henry R. Fletcher. Judgment for defendant, and plaintiff appeals. Reversed.

R. W. Maupin, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

Opinion by JONES, C. This cause originated in the justice court of Oklahoma City district. The plaintiff in error, plaintiff below, filed his bill of particulars and alleged that he was the owner of a pedigreed Persian tom cat which was maintained as a pet by plaintiff, until the 21st day of June, 1920, when the defendant Fletcher willfully and intentionally shot and killed said cat.

The matter was tried before the justice and judgment was rendered in favor of plaintiff for $150, value of said cat. The case was duly appealed to the district court of Oklahoma county and on the 28th day of October, 1920, said appeal was dismissed on motion of plaintiff in error herein for the reason that no appearance was made by defendant in error. On December 8, 1920, defendant in error filed a motion to reinstate said cause and set up certain reasons causing his neglect and failure to appear, which having been adjudged by the court to be sufficient, the appeal was reinstated. Thereafter, on April 21, 1921, plaintiff filed in the district court a motion to quash all proceedings had therein subsequent to the 28th day of October, 1920, for the reason that the district court had no jurisdiction to recall said cause from the justice court after the appeal had been dismissed and the cause remanded and the mandate had been spread of record on the justice docket, which motion was also overruled and exceptions taken, and thereafter, on the 19th day of April, 1921, said cause came on for trial before a jury and resulted in a verdict for defendant for cost. Motion for judgment notwithstanding the verdict, and also for new trial was filed, duly presented, and overruled and from the order and judgment of the court plaintiff in error appeals. The defendant in error filed an answer in the district court in which he avers that at the time and prior to the killing of said tom cat, which was a male of the feline specie, a carnivorous animal, and possessed of chicken stealing propensities, he had a flock of valuable Plymouth Rock chickens of a very ancient and illustrious strain of birds who trace their ancestry back to the landing of the Mayflower, and in all probability are direct descendants of that notable pair of birds who under divine guidance took passage on Noah's Ark on that memorable voyage, and that said chickens were domiciled in his barn yard and that he had lost a number of the small chicks just prior to the killing of the said cat, that said chicks would disappear during the daytime, and that he had been advised, and believed, that a certain cat, filling the description of the cat in question, had been seen in and about his premises, and leaving his premises going in the direction of the premises of the plaintiff in error on different occasions with a small chick in its mouth; the facts as disclosed by the record substantially support the contentions of the defendant, and while no witness positively identified the cat in question as the one seen in and about the defendant in error's premises and as being the one suspected of stealing his chickens, the

cat killed fills the description of the cat seen by the witness. The defendant in error admits that he killed the cat; that he having armed himself in the defense of his chickens, and on this particular occasion on entering his barnyard discovered the cat leaving the yard wherein the chickens were kept, and that he shot it, not in actual self-defense but immediately after it had passed through a crack in the fence into the alley, believing it to have been the cat which had been depredating upon his chicks. Plaintiff in error first contends that this appeal should be dismissed for the reason that the district court had no jurisdiction to try the case after having sustained motion to dismiss the appeal from the justice court, and having remanded said case and all papers to the justice court, but we are not inclined to agree with counsel in this particular as we understand the general rule of law to be that the court has full control of its judgments and orders during the term in which they are rendered, and we understand from the record that the motion to reinstate in this case was filed during the term and it was clearly within the discretion of the court to reinstate the case.

The first question to be determined is that of whether or not a cat under the laws of this state constitutes property. The general rule of law seems to be that all domestic animals are regarded as property, and that wild animals are not so regarded, except when captured and under the immediate dominion of some individual. Some writers distinguish between animals of real and intrinsic value for food, or beasts of burden, and animals that have no such value, but are kept to satisfy the mere whim or pleasure of the owner, among such animals we find cats; and many courts have held that animals of this nature are not subjects of larceny, except where specifically made so by statutory provisions, and we have no such statutes on cats, but notwithstanding this fact the owner thereof may enforce his rights therein by civil proceedings. It is a well recognized rule of law that animals of a carnivorous nature, such as cats and dogs, may be killed when committing depredations on the premises of others, and when damaging the stock or property of others, and in R. C. L., volume 1, p. 1127, sec. 70, we find this language:

"Also, owing to the fact that sheep owners are especially subject to loss and annoyance from the predatory and wolfish instincts of dogs, it has always been held that a sheep stealing dog found lurking about or roaming over a man's premises where sheep are kept incurs the penalty of death." Thompson v. State, 67 Ala. 160; Brent v. Kimball, 60 Ill. 211; Thorne v. Mead, 122 Mich. 273; Hinckley v. Emerson, 4 Cow. (N. Y.) 351; Parrott v. Hartsfield, 20 N. C. 242.

We think the rule here cited is fairly correct and that in this case, if it was a fact that the cat in question had been stealing the chicks of the defendant in error, and possessed such propensities, the defendant in error, finding the cat lurking about his premises and in the barn yard where his chickens were kept, would be justified in killing same.

Appellant next complains of the instructions given by the court, and especially Nos. 2, 3, and 4 which are as follows:

(2) "I take it in so far as this evidence is concerned it is the duty of the court to charge you to find for the plaintiff for the value of the cat in question."

(3) "Evidence has been admitted to you tending to show the cat may have been of a chicken stealing disposition.—Insofar as the cat in question may have killed and eaten chickens, you are instructed that the matter only can be considered by you as bearing on the value of the cat."

(4) "If you find and believe from the evidence that the cat had no value but was a nuisance in the neighborhood and on account of its chicken stealing propensities, if you find it had such propensities, it was a nuisance and of no value to anybody, then you will find for the defendant."

The instructions fail to submit to the jury the law of the case, and are ambiguous and cannot be harmonized. Instruction No. 2 is practically a peremptory instruction for the plaintiff. Instruction No. 3 instructs the jury that they may consider the evidence offered showing that the cat may have killed and eaten chickens only for the purpose of determining the value of the cat, and by instruction No. 4 the jury are instructed that if they find that the cat was possessed of chicken stealing propensities that would constitute the cat a nuisance in the neighborhood and of no value, and in such event they should find for the defendant. In other words, in one instruction the jury is told that certain propensities or habits of the cat would effect the value of the cat and should be considered in determining that question, and in the other instructions they are told that the same propensities or habits would render the cat a nuisance and of no value, and in such event they should find for the defendant; while in the second instruc-

tion they are practically instructed to return a verdict for the plaintiff.

In the case of First National Bank of Wetumka v. Nolan, 59 Okla. 20, 157 Pac. 754, this court said:

"Instructions as a whole must be consistent and harmonious and where two instructions contain inconsistent propositions the cause will be reversed for the reason that the court is unable to tell which the jury follows and which they ignore."

In the body of this opinion the case of Payne v. McCormick Harvester Machine Co., 11 Okla. 318, 66 Pac. 287, is cited wherein the court said:

"While it is a general rule that all the instructions must be considered as a whole and construed together and no particular one singled out to the exclusion of another, yet the instructions, as a whole should be consistent and harmonious, and where two instructions contain inconsistent propositions, the cause will be reversed, for the reason that the court is unable to tell which the jury followed and which they ignored."

In this case instruction No. 4 was given by the court, as we understand the record, after counsel for plaintiff had made his opening argument, and we think clearly submitted to the jury an incorrect principle of law, and one inapplicable to the facts in this case. We do not think that a domestic animal, such as a cat, is capable of constituting a nuisance in the legal sense of that term, nor would the fact that a cat possessed chicken stealing propensities render it valueless. The habits and propensities of animals may add to or detract from the value of the animal, but do not necessarily in every instance cause any depreciation in the market value of an animal, which is the test in cases of this character.

We think the rule laid down in R. C. L., volume 1, p. 1127, sec. 70, heretofore quoted, announces the correct rule applicable to this case. It is an elementary rule of law known to all that every citizen has a right to protect and defend his property and it is also a well established rule that necessarily all persons, owners of domestic animals, are required to keep them under such control and surveillance as to prevent them from depredating upon and injuring the property of others, and when they permit animals such as cats and dogs to run at large they do so at their own peril. and we think the jury should have been instructed upon that theory and while we regret to reverse a case where so little is involved, we are unable to find any rule that justifies the approval of the instructions given in this case, and therefore recommend that the same be reversed for a new trial.

By the Court: It is so ordered.