BADGEROW et al. v. MANHATTAN TRUST CO. et al.

(Circuit Court, S. D. New York. December 29, 1894.)

CONTRACTS WITH PROMOTERS—EQUITABLE LIEN—ALLEGATIONS SUFFICIENT TO ESTABLISH.

Complainants' bill alleged that they and others had subscribed to a fund for the construction of three railroads to be subsequently consolidated in one, in accordance with the terms of a circular issued by defendants, the promoters of a construction company, and a trust company, their financial agent, inviting such subscriptions, and agreeing that, as part of the consideration thereof, certain bonds of one of said railroad companies, which company was specifically named, when issued, should be set apart for and delivered to complainants and the other subscribers; but that defendants caused the bonds, when issued, to be hypothecated and sold, depriving complainants and the other subscribers of all valuable return for their investment. *Held*, on demurrer, that these allegations were probably sufficient to establish an equitable lien in complainant's favor upon the bonds in question, that the court should not attempt to deal with the novel and complicated situation foreshadowed by the bill until the proofs were before it, and that the demurrer should be overruled.

This was a suit by Gordon R. Badgerow and others, suing in behalf of themselves and others similarly situated against the Manhattan Trust Company, Amos T. French, individually and as executor of Francis O. French, deceased, and the Wyoming Pacific Improvement Company to establish a lien upon certain bonds, and for other relief. The bill of complaint, omitting certain unimportant parts, was as follows:

Gordon R. Badgerow, Charles Breun, William L. Joy, Thomas J. Stone, and E. H. Stone, citizens of the state of Iowa, and residents of Sioux City, in that state, suing in their own behalf and in behalf of all other subscribers to the construction fund hereinafter described of the Wyoming Pacific Improvement Company, similarly situated with them, who shall come into this suit and contribute to the expense thereof, bring this, their amended bill, by leave of the court, against the Manhattan Trust Company, a corporation created and existing under the laws of the state of New York, and a citizen of that state, having its principal place of business in the city of New York; Amos T. French, a citizen and resident of the state of New York, the said Amos T. French, as executor of the last will and testament of Francis O. French, deceased; and the Wyoming Pacific Improvement Company, a cor-

poration existing under the laws of the state of Wyoming, and a citizen of that state. And thereupon your orators complaining show unto your honors, as follows:

(1). The defendant Amos T. French, and Francis O. French, now deceased, with one Edward R. Gedney, George R. Blanchard, and Donald McLean, were at all the times hereinafter mentioned promoters of a company known as the Wyoming Pacific Improvement Company, one of the defendants above named (hereinafter called the "Improvement Company"), and, through the instrumentality of said company, of a project for constructing and equipping a line of railway from Covington, Nebraska, on the Missouri river, opposite Sioux City, Iowa, to Salt Lake City, or Ogden, Utah, a distance of about 960 miles, which line of railway was known as the Pacific Short Line, and was intended to embrace three connecting lines of railway to be constructed, to wit, the Nebraska and Western Railway (hereinafter called the "Nebraska Railway"), the Wyoming and Eastern Railway, and the Salt Lake Valley and Eastern Railway. Francis O. French was the principal promoter, and at all times exercised a controlling influence over his associate promoters. Amos T. French, who is a son of Francis O. French, was an active promoter of said company and said project. The defendant the Manhattan Trust Company was cognizant of and actively aided in the promotion of said company and of said project. Said Gedney, Blanchard, and McLean are all non-residents of the state of New York and of the state of Iowa, and are not known or believed by your orators to be solvent or financially responsible. The promoters caused the improvement company to be incorporated in March, 1888, under the laws of the then territory, now state, of Wyoming, with a nominal capital of $1,500,000, and to be reincorporated in March, 1889, with a nominal capital of $3,000,000. They at all times controlled the improvement company, and through it the railway companies owning the lines of railway aforesaid, which they caused to be incorporated contemporaneously, or nearly so, with the improvement company. The stock of the railway companies was issued and owned by the improvement company. The only portion of the projected Pacific Short Line which the improvement company and the promoters actually undertook to construct and equip, and which was actually constructed, was a section of the Nebraska Railway from Covington to O'Neil, Nebraska, a distance of about one hundred and twenty-nine miles, which section of railway was completed some time during the year 1890.

\* \* \* \* \* \* \* \* \* \* \* \*

(3) The plan adopted by the promoters at the inception of the improvement company to carry out their project and to place the capital stock of the improvement company was the formation of a syndicate, composed of the promoters and of all those persons who should subscribe and contribute to a construction fund for building and equipping the first section of the projected line of railway from Covington westward, and, having thus completed this section, and paid for it, to proceed with the enterprise, with the aid of capitalists, which they expected then to be enabled to procure. This plan was, at the inception thereof, and at all the times hereinafter mentioned, well known to the defendant the Manhattan Trust Company. Thereupon the promoters, some time in the latter part of the year 1888 or early in 1889, through printed circulars issued and published through the agency of the improvement company, and by oral solicitations, invited the public of Sioux City, including your orators, to subscribe to a construction fund of the improvement company for the purpose of building said section. The circular above referred to was in the following form:

"Pacific Short Line.

"The Salt Lake Valley & Eastern, the Wyoming & Eastern, and the Nebraska & Western Railway Companies, respectively, have contracted with the Wyoming Pacific Improvement Company for the construction of their several lines extending from Covington, Nebraska (opposite Sioux City, Iowa), to Salt Lake City, Utah, a distance of about 960 miles. It is proposed to consolidate these companies in one corporation, to be styled the Pacific Short Line. The Wyoming Pacific Improvement Company will receive for the road as constructed stock and bonds as follows: $20,000 of forty years' five per cent. bonds and $19,500 of stock for each mile of completed road.

The companies above named will issue for each mile of road $25,000 of forty years' five per cent. bonds and $20,000 of stock. The stocks and bonds issued to and received by the Wyoming Pacific Improvement Company will be exchanged at par for stock and bonds of the Pacific Short Line Company, when same are issued. The Wyoming Pacific Improvement Company invites subscriptions on the following terms: Each subscriber of $10,000 or any multiple thereof, and on payment of the amount to the Manhattan Trust Company, becomes entitled to receive—

| | |
|---|---:|
| $5,000 bonds at 90 .......................................... | $ 4,500 |
| Trust receipts for fifty-five shares Wyoming Pacific Improvement Company stock, at par .................................... | 5,500 |
| | $10,000 |

—In accordance with terms of certificate, copy of which follows:

" 'No.                                                                    $..........

### " 'Certificate of Subscription.
#### " 'Pacific Short Line.

" 'This is to certify that    .         having subscribed         dollars, will be entitled, on payment thereof to the Manhattan Trust Company, to receive trust certificates for Wyoming Pacific Improvement Company stock for         shares (being 55 per cent. of said subscription), and also railway bonds for $         (being 50 per cent. of said subscription), which shall be delivered within two years from date, or as soon thereafter as the same are issued; subject to option to purchase said bonds at 95 and accrued interest within two years.

" 'This certificate is negotiable only by transfer on the books of the company, and with the assent of this company first obtained thereto.

" 'Wyoming Pacific Improvement Company,
" 'By

" 'Secretary.

" 'New York,         , 18 .
" 'Countersigned and registered by Manhattan Trust Company.
" 'By

" 'President.'

" '[Indorsement.]

" 'The installments on account of the subscription represented by this certificate have been paid as follows:

| Per Cent. | Date. | Amount Paid. | |
|---|---|---|---|
| 25 | | | Manhattan Trust Co. By |
| 15 | | | Manhattan Trust Co. By |
| 10 | | | Manhattan Trust Co. By |
| 10 | | | Manhattan Trust Co. By |
| 10 | | | Manhattan Trust Co. By |
| 10 | | | Manhattan Trust Co. By |
| 10 | | | Manhattan Trust Co. By |
| 10 | | | Manhattan Trust Co. By' |

"At the option of the subscriber, payment may be made in full. In case of default, at option of the Wyoming Pacific Improvement Company, all further rights of the subscriber shall cease to the extent of such default; and for all cash actually paid there shall be required to the subscriber, in lieu of any other interest, the amount paid in bonds at par.

"In consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, the undersigned hereby agree, each for himself, and not

one for another, to subscribe the sum set opposite our respective signatures, and to pay the same to the Manhattan Trust Company, trustee, for credit of Wyoming Pacific Improvement Company, payable 25 per cent. on signing this agreement, and the remainder in seven installments, one of 15 per cent. and six of 10 per cent. each respectively, when called for by Wyoming Pacific Improvement Company, but not oftener than once in thirty days. On final payment negotiable certificate will be given, countersigned by the trust company, in the form hereinbefore set forth.

Signature.       Address.       Amount."

(4) Thereupon your orators, before the 4th day of February, 1889, accepted said invitation, and subscribed to said construction fund the amounts hereinafter set opposite their names, respectively, by signing a circular in the form above set forth, to wit:

| | |
|---|---:|
| Gordon R. Badgerow | $ 2,500 |
| Charles Breun | 1,000 |
| William L. Joy | 10,000 |
| Thomas J. Stone | 10,000 |
| E. H. Stone | 10,000 |

Contemporaneously with these subscriptions, the sum of $337,500, or thereabouts, including your orators' subscriptions, was subscribed to said construction fund by residents of Sioux City.

 *  *  *  *  *  *  *  *  *  *  *  *

(6) Thereupon, and after the agreements hereinbefore set forth had been duly made, and before the 28th day of June, 1890, your orator Gordon R. Badgerow paid his subscription in full in installments as they were called for, and, contemporaneously with his payments, all or nearly all the subscriptions made to said construction fund in Sioux City, as hereinbefore set forth, were duly paid in.

(7) Upon completing the payment of his subscription, your orator Gordon R. Badgerow, on or about the 28th day of June, 1890, received from the Manhattan Trust Company a trust certificate and a subscription receipt, of which the following are copies:

"No. 16.                  13¾ Shares.

"Trust Certificate for Stock of the Wyoming Pacific Improvement Company.

"This certifies that G. R. Badgerow is entitled to receive, on the first day of October, 1893, thirteen ¾ shares of $100 each, par value, of the capital stock of the Wyoming Pacific Improvement Company, and also to receive any dividends that may in the meanwhile accrue thereon, when and as the same may be paid. The shares represented by this certificate are deposited with and stand in the name of the Manhattan Trust Company, trustee, under the agreement dated October 12th, 1888. This certificate is transferable in person or by attorney only with the consent of the Wyoming Pacific Improvement Company indorsed hereon, and on surrender of this certificate.

            "Manhattan Trust Company, Trustee,
               "By C. W. Haskins, Secretary.

"Registered this ninth day of June, 1890.
            "Wyoming Pacific Improvement Company,
              "By Wendell Goodwin, President."

"No. 16.                  $1,250.00.

"Subscription Receipt for First Mortgage Five Per Cent. Gold Bonds of the Nebraska and Western Railway Company.

"This is to certify that G. R. Badgerow is entitled to receive, on the first day of May, 1891, or as soon thereafter as same may be issued, one one-quarter first mortgage five per cent. gold bonds of $1,000 each of the Nebraska and Western Railway Company, due 1929, according to the terms of subscription to the Wyoming Pacific Improvement Company, subject to the right of the Wyoming Pacific Improvement Company to cancel this receipt on payment to G. R. Badgerow of ninety-five per cent. and accrued interest for said bonds on or before May 1, 1891. This receipt is transferable in per-

son or by attorney only with the consent of the Wyoming Pacific Improvement Company indorsed hereon, and on surrender of this receipt.

"Wyoming Pacific Improvement Company,
"By Wendell Goodwin, President.
"Countersigned and registered this twenty-eighth day of June, 1890.
"Manhattan Trust Company,
"By C. W. Haskins, Secretary."

(8) Your orators Charles Breun, William L. Joy, Thomas J. Stone, and E. H. Stone duly paid their subscriptions in full in installments as called for as aforesaid, and thereupon severally duly received from the Manhattan Trust Company trust certificates and subscription receipts in the same form as and substantially like the certificate and receipt above set forth, excepting that the proportionate amounts of said stock and bonds to which they were respectively entitled were duly specified in their certificates and receipts.

(9) The Manhattan Trust Company became financial agent of the syndicate at its inception, and acted in the relation of such financial agent at all the times hereinafter mentioned. At the time these circulars were issued and published, none of the capital stock of the improvement company had actually been subscribed for, excepting, perhaps, a very small amount thereof, but what precise amount, if any, is unknown to your orators, and not more than about four shares of the par value of $100 each issued, if at all, to enable the promoters, or some of them, to qualify as trustees of said company had been actually paid for, and the stock of the improvement company referred to in the circulars was stock to be issued to the subscribers to the construction fund, as original subscribers to the stock of the improvement company. Only a portion of the stock of the improvement company, to wit, not more than $764,707.85 par value thereof, was ever subscribed for, and none of the stock, excepting, perhaps, the shares issued to the trustees as aforesaid, to enable them to qualify, were ever delivered to the subscribers, but all said stock, so far as it was issued, if at all, was immediately when issued delivered to the Manhattan Trust Company, and retained by it under the agreement of October 12, 1888, mentioned in the trust certificate of stock hereinbefore set forth, with a voting power upon said stock, until the 1st day of October, 1893, reserved and secured to certain of the promoters, to wit, Francis O. French, George R. Blanchard, and one other person designated by them whose name is to your orators unknown, but is believed by them to be Edward R. Gedney. Through the exercise of this voting power, Francis O. French and the promoters associated with him were enabled to elect, and they did at all times elect or cause to be elected, trustees or directors as well as officers of the improvement company, of their own choice, who at all times remained under their influence and control. Francis O. French was a trustee or director and the first president of the improvement company, and continued to act as such until about January 1, 1889, when he resigned. Amos T. French was from the outset, and until late in the year 1890, the secretary and treasurer of said improvement company. After the said Francis O. French resigned as aforesaid, he continued to be represented in the board of trustees by his son, said Amos T. French. The said Francis O. French was also at all the times hereinbefore and hereinafter mentioned president of the Manhattan Trust Company, and Amos T. French was at the same times treasurer of said trust company. Donald McLean, hereinbefore mentioned, was agent of the improvement company, and of the promoters to solicit subscriptions in Sioux City.

(10) On or shortly after the 1st day of February, 1890, an agreement was effected between the improvement company and the Manhattan Trust Company, through the procurement or with the connivance and aid of Francis O. French and of the defendant Amos T. French, pursuant to which agreement all the bonds issued or agreed to be issued to the improvement company by the Nebraska and Western Railway Company were hypothecated with the Manhattan Trust Company to secure loans to the improvement company to the amount of $1,000,000. Subsequently, in the same year, all the stock of the said railway company, and all the bonds issued by said company, were, by the procurement or with the connivance and aid of Francis O

French and the defendant Amos T. French, hypothecated with the said trust company to secure a further loan to the improvement company of $600,000. Pursuant to the terms of said agreement, a commission of five per cent. was paid by the trust company out of said loans to underwriters thereof, who had agreed to purchase said bonds at the rate of fifty cents on the dollar, and a further commission of two and one-half per cent. to Francis O. French and others for securing the underwriting of said loans.

(11) Before the 1st day of February, 1890, and at the times said hypothecations above mentioned were made, the Manhattan Trust Company and said Francis O. French and Amos T. French well knew that your orators had subscribed to said construction fund, and that subscriptions to said fund had been made in Sioux City to the amount of $337,500, and in all to over $500,000, and that subscription agreements in the form and in the manner hereinbefore set forth had been made with your orators and the other subscribers to said fund; and that your orators and the other subscribers had duly paid in installments of their subscriptions as called for under the terms of said agreements, and that your orators had thus paid in the whole or the greater part of their subscriptions respectively, and that the other subscribers had also paid in the whole or the greater part of their subscriptions; and that your orators and the other subscribers to said fund, under the terms of their subscription agreements, and upon completing the payments of their subscriptions, were entitled to receive trust certificates for stock and subscription receipts for bonds entitling them to stock of the improvement company and to said first mortgage bonds of the Nebraska & Western Railway Company in proportion to the amounts of their subscriptions as specified in their subscription agreements respectively. The Manhattan Trust Company, in pursuance of your orators' said agreements, duly delivered to your orators their said certificates and receipts in the form and in the manner above set forth, and also delivered to the other subscribers to said fund, upon their paying their subscriptions in full respectively, similar certificates and receipts, for the amounts of stock and bonds to which they were severally entitled under their said agreements. The total amount of bonds to which the said subscribers were thus entitled, as the Manhattan Trust Company and said Francis O. French and Amos T. French well knew, exceeded the sum of $250,000 par value of said bonds.

(12) When your orators contributed to the construction fund as aforesaid, it was understood by and between them and the improvement company and the Manhattan Trust Company, to the knowledge of Francis O. French and Amos T. French, that the bonds of the Nebraska and Western Railway Company, when issued, on account of said section of railway from Covington to O'Neil, and the stock of the improvement company when issued, should, to the amounts specified in the subscription receipts and trust certificates hereinbefore mentioned, be set apart and reserved for delivery to your orators at the time specified in said receipts and certificates respectively. But the said Manhattan Trust Company, in willful disregard of said understanding, wrongfully, and in fraud of your orators, at the instance or with the connivance and aid of said Francis O. French and said Amos T. French, caused said hypothecations of bonds and stocks to be made, and accepted and effectuated said hypothecations. The bonds so hypothecated were bonds secured by a mortgage made by the said Nebraska and Western Railway Company to the Manhattan Trust Company upon the said section of railway from Covington to O'Neil, and embraced the entire issue of said bonds, and all the bonds which by the terms of said mortgage the said railway company was authorized to issue. And the said Manhattan Trust Company, with full knowledge that said hypothecations embraced all the bonds which the said Nebraska and Western Railway Company had issued, or was authorized to issue, and that said hypothecations rendered impossible a delivery of bonds and stock in compliance with said receipts and trust certificates, nevertheless, in fraud of your orators and the other subscribers, at the instance or with the connivance and aid of said Francis O. French and Amos T. French, caused said bonds and stock to be hypothecated with it as aforesaid, and accepted and effectuated said hypothecations. All said bonds and stock so hypothecated with the Manhattan Trust Company, as aforesaid,

were during the year 1890 sold out pursuant to the terms of said hypothecations, and passed into the possession and ownership of many persons, to your orators unknown. The facts of said agreement to hypothecate said bonds and of said hypothecations of bonds and stock were never disclosed to your orators, but were fraudulently concealed from them by the said trust company and by said Francis O. French and Amos T. French, and your orators did not know and did not learn said facts until long after said bonds and stock had been hypothecated and sold out as aforesaid.

(13) The fair cost of constructing the said section of railway from Covington to O'Neil did not exceed $10,000 per mile. Before the said hypothecations of stock and bonds were made, there had been subscribed for the purpose of constructing said section of railway over $600,000, and there was actually paid in on account of such subscription over $500,000, to wit, the sum of $513,000 or thereabouts.

(14) The said bonds and stock comprised all the valuable assets of the improvement company, and by the hypothecation and sale thereof the stock of the improvement company was rendered wholly worthless, and said company has never since had, and it has not now, any valuable assets whatsoever. Said mortgage has been foreclosed by the trust company, and the said section of railway has been sold under a decree of foreclosure and sale. The improvement company became, in the latter part of the year 1890, hopelessly insolvent, and passed into the hands of receivers, and has practically ceased to exist. It is made a formal party to this bill. Neither the stocks nor bonds designated or mentioned in the trust certificates and in the subscription receipts hereinbefore described have been delivered to your orators, or either of them, or to the other subscribers, and they have never received anything of value for or on account of their said subscriptions. Your orators did not know or learn of the frauds and wrongs hereinbefore alleged until after the sale of the stock and bonds so hypothecated as aforesaid.

Defendants demurred to the bill.

Oliver P. Buel, for complainants.

John L. Cadwalader, for defendant Manhattan Trust Co.

De Lancey Nicoll, for defendant French.

COXE, District Judge. The transactions out of which this controversy arose are complicated and perplexing. The actors are so numerous and appear in so many different characters, individual and representative, their rights, duties and obligations cross and recross at so many points that it is by no means an easy task to weigh the questions involved in the light of all these relations or to follow to a demonstration any of the theories presented. If the complainants had an equitable lien upon the bonds of the Nebraska Company to the extent of their interest under the subscription receipts they are entitled to relief of some sort in equity. The court understands that this is not seriously disputed. but, even if it were, it is thought that the proposition is a sound one. If the bonds of this company were impressed with such a lien, and the defendants, with full knowledge of its existence, disposed of the bonds without the complainants' consent and to their injury, equity will afford relief. The question is, does the bill allege such a lien? The following is a summary of the alleged facts: It was agreed that the complainants' money was to be expended in constructing the Nebraska Railway and that the bonds to be delivered to them, in return for their money, were to be the bonds of that railway company and no other. The subscription receipts delivered to them by the improvement company expressly re-

cite that the complainants were entitled to receive bonds of the Nebraska Company. At the time the complainants contributed, it was understood by and between them and the defendants that these bonds, to the amount specified in the receipts, should be set apart and reserved for delivery to the complainants. In short, upon the express agreement that they should receive these bonds—it being the intent and purpose of both parties that a sufficient number of bonds should be set apart and reserved for the complainants—they subscribed their money. If they were deprived of the bonds their money was lost. There was nothing else of value left. In these circumstances the defendants, with full knowledge of complainants' rights and in fraud of those rights, entered into a scheme which resulted in taking from the complainants their bonds and leaving them without a dollar to show for the money they had advanced. These, in brief, are the averments. Are they sufficient? It is true that the bill might be more explicit. It is not, perhaps, as clear and full as it should be on this subject. On the other hand it must be remembered that the form of the agreement which creates a lien is not as material as the ultimate intent of the parties. Equity looks through form to substance. If the intent to charge designated property is established the lien follows. 3 Pom. Eq. Jur. § 1237. The bill is not demurrable if its allegations when aggregated establish an agreement from which the deduction follows that it was the intent and purpose of the parties to create such a lien. While conceding that the proposition is not free from doubt the court is inclined to the belief that the bill states a cause of action. As was said by Mr. Justice Miller in Merriam v. Publishing Co., 43 Fed. 450:

"The demurrer goes to the whole bill and asserts that it contains no averments warranting equitable relief of any sort. We are unable, at this time, to assent fully to that view; but, at the same time, we do not wish to be understood as declaring definitely that the complainant is entitled to equitable relief."

Many authorities have been examined without finding one exactly in point, but in the action brought by the Fidelity Loan & Trust Company against these defendants to recover damages, this court decided that the western subscribers had no remedy at law against the Manhattan Trust Company, and, incidentally, suggested that their remedy was to enforce their lien in a court of equity. Though this suggestion was, probably, obiter, it is not unlikely that the complainants were influenced by it in bringing this action and, though not controlling, it is, in the circumstances, entitled to weight. It is thought that wisdom and prudence require that the court should not at this time attempt to deal with the novel and complicated situation foreshadowed by the bill, but should postpone its consideration until the proofs are all before it.

The demurrers are overruled, the defendants to answer within 30 days.