# UNITED STATES FIDELITY & GUARANTY CO. v. FIDELITY TRUST CO. *et al.*

No. 6457.   Opinion Filed November 23, 1915.

(153 Pac. 195.)

1. **APPEAL AND ERROR—Dismissal—Want of Necessary Parties.** Same as paragraph 1 in syllabus to **General Electric Company et al. v. Sapulpa & Interurban Railway Company et al., ante,** 153 Pac. 189.

2. **JUDGMENT—Rendition—Issues Undisposed of.** Same as paragraph 2 in syllabus to **General Electric Company et al. v. Sapulpa & Interurban Railway Company et al.,** 153 Pac. 189.

3. **PLEADING—Issues.** Same as paragraph 3 in syllabus to **General Electric Company et al. v. Sapulpa & Interurban Railway Company et al., ante,** 153 Pac. 189.

4. **JUDGMENT—Rendition—Ground for Reversal—Refusal to Set Aside Judgment.** Same as paragraph 4 in syllabus to **General Electric Company et al. v. Sapulpa & Interurban Railway Company et al., ante,** 153 Pac. 189.

5. **APPEAL AND ERROR—Record—Verity.** Same as paragraph 5 in syllabus to **General Electric Company et al. v. Sapulpa & Interurban Railway Company et al., ante,** 153 Pac. 189.

6. **LIMITATION OF ACTIONS—Running of Statute—Accrual of Cause—"Cause of Action Has Accrued."** Where one person may rightfully sue another, a cause of action has accrued, and the statute of limitations begins to run.

7. **LIMITATION OF ACTIONS—Pleading—Demurrer.** Where a petition upon its face does not show that the cause of action is barred by the statute of limitations, a demurrer thereto, urged specially upon that ground, should be overruled.

8. **CHATTEL MORTGAGES—Railroads—Equitable Lien—Pleading.** Intervener's petition charged that in the year 1909 the Sapulpa & Interurban Railway Company entered into written contracts with certain persons by which, in consideration of certain sums of money to be paid it by said persons, it covenanted and agreed to extend and put in operation certain lines of electric road in Creek county within six months from the date thereof, and to issue and deliver to said persons bonds of said railway company, having a par value equal to the amounts paid said company by said persons respectively therefor, and further covenanted and agreed in said contracts that the payment of said bonds would be secured by a first mortgage on the entire road and its equipment; that the payments were all made in reliance upon the written agreement to so extend said line of railway, and to execute and deliver the bonds secured by first mortgage on the railway property; that the funds derived were received and retained by the railway company under the terms of said contracts, but that said company failed to issue said bonds and execute said mortgage, and had never repaid the sums so advanced it; and that during the year 1914 intervener became and then was the owner of said contracts. The petition further alleged that the funds received by said railway on account of said contracts were used by it in the construction of extensions to its line of road, and in the acquisition of additional equipment, not covered by or included in a prior deed of trust on certain of the railway company's property, and charged, because of the fact that the original holders of the bond contracts were induced to advance to said railway company said sums of money under the express promise and contract of said company to make said extensions and to secure the repayment thereof by a first mortgage upon its road and equipment, including said extensions and additional equipment, said extensions and equipment came

into existence and became the property of the railway company, charged with an equitable lien in favor of the holder or holders of said contracts, as security for the repayment of said sums of money. **Held,** on demurrer, that the allegations of the petition were sufficient to create an equitable lien upon the subsequently acquired extensions and additional equipment of the railway company, and the fact that said extensions or equipment were not in existence or owned by the railway company at the time the contracts were made would not in equity defeat intervener's right to such lien upon said property when it came into existence.

9. **PLEADING—Oral Demurrer—Effect.** A demurrer ore tenus, or an oral demurrer, should be considered as a general demurrer only. It is error to sustain such demurrer where the pleading attacked states a cause of action entitling the pleader to any relief.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action between the United States Fidelity & Guaranty Company and the Fidelity Trust Company and others. From an order denying an application to set aside a purported decree, and from a judgment sustaining demurrers of the Fidelity Trust Company and others to intervening petition of the United States Fidelity & Guaranty Company, the latter brings error. Reversed and remanded, with directions.

*Ames, Chambers, Lowe & Richardson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *McDougal & Lytle,* for the State and defendant in error General Electric Co.

*R. B. Thompson (Asp, Snyder, Owen & Lybrand,* of counsel), for defendants in error Fidelity Trust Co. and St. Louis Union Trust Co.

SHARP, J. The action of the trial court in overruling and denying the motion of the plaintiff in error to va-

cate, annul, and set aside the purported decree of the court, dated October 31, 1913, as well as the motion to dismiss the appeal, involves questions presented and determined in the case of *General Electric Co. et al. v. Sapulpa & Interurban Ry. Co. et al., ante,* p. 376, 153 Pac. 189, this day decided. For the reasons given in the opinion in that case, the motion to dismiss the appeal in the present case is overruled; also the action of the trial court in signing the journal entry, dated October 31, 1913, purporting to be a decree in favor of the defendant in error Fidelity Trust Company, and against the several defendants and interveners, and in refusing to vacate and set the same aside, is reversed, upon the authority of *General Electric Co. et al. v. Sapulpa & Interurban Ry. Co. et al.*

The present case, however, presents other questions for our consideration and determination. On April 15, 1914, leave was granted the United States Fidelity & Guaranty Company to file in consolidated cause No. 2957, *Fidelity Trust Co. v. Sapulpa & Interurban Railway Co. et al.,* its intervening petition, which petition was accordingly filed in said court on said day. Said petition alleged that on March 26, 1914, intervener had filed in said cause its application for the allowance of payment of certain claims against the Sapulpa & Interurban Railway Company, and charged that in the year 1909 the said railway company entered into written bond contracts with certain persons by which, in consideration of certain sums of money paid and to be paid to it by said persons, it covenanted and agreed to extend and have in operation its line of electric road between Sapulpa, Kiefer, and Glenn Pool, in Creek county, within six months from the date of said contracts, and to issue and deliver to said

persons bonds of said railway company having a par value equal to the amounts paid into said company by said persons respectively therefor, which said bonds were to be payable in ten years, and to bear interest at the rate of six *per cent. per annum;* that it was further covenanted and agreed in said bond contracts that the payment of said bonds would be secured by a first mortgage on the entire line of road and equipment of said railway company. The petition then gives the names of the persons with whom said contracts were made, the dates thereof, and the amounts paid thereunder by said persons to the railway company, and charges: That the payment of said sums of money by said persons to said railway company were all made in reliance upon the written agreement of the said railway company to so extend said line of railway, and to execute and deliver to said persons said bonds, secured by first mortgage upon the entire line of road and equipment of said railway company, and said sums were so paid to said railway company solely for said bonds, which were to be so used and secured. That the said railway company took, received, and retained said sums of money from said persons, under the terms of said bond contracts, and after collecting and receiving from the persons therein named the sums of money therein set out, which said sums said persons were induced to pay under and by means of the covenants and agreements, contained in said contracts, to execute and deliver said bonds, and secure the payment of the same by first mortgage upon the entire line of road and equipment of said company, said railway company expended said sums so paid and received in extending said line of electric road from Sapulpa to the town of Kiefer, and in building the extension to Forest

Park, and in purchasing certain additional cars to be run between Sapulpa and Kiefer; and that said railway company failed and refused to issue said bonds and to execute said mortgage, and had never repaid the said persons or any subsequent holders of said contracts said sums of money or any part thereof. That on or about March 12, 1914, the petitioner therein became, and thereafter was, the owner and holder of said bond contracts, copies of which were attached as exhibits to plaintiff's intervening petition. The petition further charged that prior to the execution of said bond contracts the railway company had become and was indebted to the St. Louis Union Trust Company in the sum of $50,000, to secure the payment of which sum said railway company, on the 1st day of February, 1908, executed a mortgage or deed of trust to the Fidelity Trust Company, as trustee, for the use and benefit of the said St. Lou's Union Trust Company, upon the entire line and equipment of said railway company as then existing; that at the time of the creation of said indebtedness to said St. Louis Union Trust Company, and at the time of the execution of said mortgage or deed of trust to said Fidelity Trust Company, securing said indebtedness, and for a long time thereafter, said railway company's line of road comprised only about two miles of trackage, the description of which said line as then existing was at the time unknown to the petitioner, but that it offered to prove said description upon a hearing, and asked leave to incorporate said description, as proved, in such order or decree as should be made upon such hearing. The petition further alleged that in neither the note or bonds evidencing said indebtedness to said St. Louis Union Trust Company, nor in the mortgage or deed of trust executed to the Fidelity Trust Company,

did said railway company obligate itself to make any or either of the extensions to said line or lines or additions to its equipment therein mentioned. The petition further charged: That the extension of the said line of railway, from the city of Sapulpa to the town of Kiefer, a distance of about six miles, and the extension of said line of railway to Forest Park, and the additional equipment of said railway, consisting of the cars operating on the Kiefer extension, were none of them built or owned by said railway company at the time of the creation of its debt to the St. Louis Union Trust Company, or the execution of the mortgage or deed of trust to the Fidelity Trust Company, or for a long time thereafter; and that said extensions and additional equipment were not constructed or acquired until after the execut.on of said bond contracts therein mentioned, then held and owned by the petitioner, and until after the payment to the said railway company by the original holders of said bond contracts of the amount of said contracts, aggregating the sum of $14,733. That the sums so collected on said bond contracts were expended by said railway company in the construction of said extensions and the acquis.tion of additional equipment. That as to all of said extensions of said line of railway and additional equipment, constructed and acquired subsequent to the creation of said debt to the said St. Louis Union Trust Company and the execution of said mortgage or deed of trust to said Fidelity Trust Company, neither of said trust companies was a purchaser or mortgagee for value, but the lien of said mortgage or deed of trust so executed to the Fidelity Trust Company on said subsequently constructed and acquired extensions and additional equipment was then subject to all liens and equities, valid against said railway company,

arising in the construction and acquisition of said exten-
sions and additional equipment. That because of the fact
that the original holders of said bond contracts were in-
duced to advance said railway company the said sums of
money, under and by virtue of the express promise and
contract of said railway company to make said exten-
sions to said line of railway, and to secure the repayment
of said sums by a first mortgage upon the entire line of
road and its equipment, including said extensions and
additional equipment, said extensions and additional
equipment came into existence and became the prop-
erty of said railway company charged from their incep-
tion with an equitable lien in favor of the holder of said
bond contracts, as security for the repayment of said
sums of money, which said equitable lien was prior to and
superior to the claims and liens of said St. Louis Union
Trust Company and said Fidelity Trust Company,
and to the claims and liens of any and all other
creditors of said railway company. That at the time
of the execution of said bond contracts, and the ad-
vancement of said sums of money by the holders thereof
to said railway company, said St. Louis Union Trust Com-
pany and said Fidelity Trust Company each had full
knowledge of their execution, the fact of the advance-
ment of money thereunder by the holders thereof, the
terms and provisions of said contracts, and of the facts
and circumstances relating thereto, as well as the purpose
for which said money so advanced was to be used, and
counseled and advised said railway company to execute
said contracts, and to procure said sums thereunder. The
petitioner asked that it be adjudged and decreed to have
an equitable lien upon the extensions and additional
equipment of the railway company therein mentioned;

that said equitable lien upon said. extensions and additional equipment .be adjudged to be prior and superior to the claims and liens of the said St. Louis Union Trust Company and the said Fidelity Trust Company, and all other creditors of said railway company; that said petitioner's claim under said bond contracts, with interest thereon, be adjudged and be decreed to be secured by said equitable lien on said extensions and additional equipment; that the. lien of said petitioner on said extensions and additional equipment be protected by separate sale or by separate appraisement of said extensions or equipment; and that out of the proceeds of the sale of said railway company's property, including said extensions and additional equipment, petitioner's claims under said bond contracts be first paid before any other application of the proceeds of said property be made.

To the petition the plaintiff below, Fidelity Trust Company, and the defendants General Electric Company and the State of Oklahoma *ex rel.* J. D. Lankford, Bank Commissioner, demurred *ore tenus,* which demurrers were, on May 9, 1914, sustained; the order . sustaining them reciting that the petition failed to show that the United States Fidelity & Guaranty Company was entitled to an equitable lien upon either the Kiefer extension or the Forest Park extension of the defendant railway company. The court's action in this respect is assigned as error. Assuming that the defendants General Electric Company and State of Oklahoma had the right, prior to having established their respective claims, to contest the allowance of other claims and liens, and hence the right to demur to the intervening petition of the plaintiff in error, should the demurrers have been sustained? It is said that the claim of the plaintiff in error is barred by

limitations, because of the fact that the basis of its claim, and the obligations from which it arose, were made and entered into more than five years prior to the filing of intervener's petition, and sections 3844, 4657, Rev. Laws 1910, are cited and relied upon in support of the court's action in sustaining the demurrers. By section 4654, Rev. Laws 1910, it is provided that civil actions can only be commenced within the period prescribed in article 2, c. 60, of the Statutes, after the cause of action shall have accrued; and by section 4657 it is provided that an action upon any contract, agreement, or promise in writing shall be brought within five years after the cause of action shall have accrued, and not afterwards. When, then, did the several causes of action accrue to the holders of the original bond contracts? The various contracts were executed in the months of January and February, 1909, and provided for the payment of a sum named in cash, and additional sums monthly thereafter until the entire amount subscribed had been paid, and that the railway company was to construct and put in operation its line of electric railroad between Sapulpa, Kiefer, and Glenn Pool within six months from the date of the several contracts, and that the bonds agreed to be delivered to the holders should be furnished them by the railway company within ten days from the date of the completion of the line of road to Kiefer and Glenn Pool, and upon full payment of the amounts subscribed. From the foregoing it will be seen that the mortgage was to be executed at a future time, and the bonds secured thereby to be delivered within a fixed time from the completion of the line of railroad. When the road was in fact completed the petition does not allege. If, at the expiration of six months (the maximum time fixed), the statute would not

have begun to run until June or July, 1909. But this is not all—for the contract further provides that the bonds were not to be delivered until the completion of the line of road and the full payment by the subscribers of the amount of the respective bond subscriptions. These final payments were made at various dates, and within five years of the time that the petition was filed; so, even were it made to appear that the road was completed within less than the maximum time allowed, still no cause of action would have accrued to the original holders of the contracts, on account of the further provision with respect to payment. Whenever one person may sue another, a cause of action has accrued, and the statute begins to run. In the law of contracts, the statute of limitations begins to run against a party to the contract, himself not in default, when the contract is broken by the other party, but not before that time. The petition not disclosing upon its face that the cause of action was barred by statute, it was error for the court to sustain a demurrer thereto on that ground. *Betz v. Wilson,* 17 Okla. 383, 87 Pac. 844; *Tucker v. Hudson et al.,* 38 Okla. 790, 134 Pac. 21.

Likewise, we think the court erred in sustaining the plaintiff's demurrer to the intervening petition. The allegations of the petition we have already set out at length. From them no other conclusion can be drawn than that the holders of the several bond contracts had an equitable lien upon a portion, if not all, of the property of the Sapulpa & Interurban Railway Company. The contracts were in writing, and provided that the railway company should issue and sell to the subscribers the amount of bonds named in each contract, and agreed to secure the payments made thereunder by a first mortgage upon the entire line of road and its equipment. The petition al-

leged that the subscribers to said contracts paid to the railway company par value for said bonds, and that the payments thereon were made in reliance upon the railway company's written agreement to extend its line of road and to execute and deliver the bonds and secure their payment by a first mortgage upon the entire line of road and its equipment; that the railway company received and retained said sums of money under the terms of said bond contracts, and used the same in building extensions to Kiefer and other points; and that it failed and refused to issue the bonds or execute a mortgage as theretofore undertaken.

It is a familiar rule, supported by many authorities, that an agreement to give a mortgage or security on certain property, not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will treat as done that which by agreement is to be done. 1 Jones on Mortgages (6th Ed.), secs. 162, 163. The rule is stated in Pomeroy's Equity Jurisprudence, at section 1235, as follows:

"The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promised to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property, in the hands, not only of the original contractor, but of his heirs and administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice."

Among the many authorities sustaining, and some of which cite the text, are the following: *White Water Val-*

ley Canal Co. v. Vallette, 21 How. (62 U. S.) 414, 16 L. Ed. 154; Ketchum v. City of St. Louis, 101 U. S. 316, 25 L. Ed. 999; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075; Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, and note; Edwards v. Scruggs, 155 Ala. 568, 46 South. 850; Perry v. Board of Missions, 102 N. Y. 99, 6 N. E. 116; Hutzler Bros. v. Phillips, 26 S. C. 136, 1 S. E. 502, 4 Am. St. Rep. 687, and note; Richardson v. Hamlett, 33 Ark. 237; Martin v. Nixon, 92 Mo. 26, 4 S. W. 503; Foster Lbr. Co. v. Harlan County Bank, 71 Kan. 158, 80 Pac. 49, 114 Am. St. Rep. 470, 6 Ann. Cas. 44; Racouillat v. Sansevain, 32 Cal. 376, 389; Atkinson et al. v. Miller, 34 W. Va. 115, 11 S. E. 1007, 9 L. R. A. 544. The well-known maxim, that equity looks on that as done which ought to be done, has long since established the principle, that an agreement in writing to give a mortgage, where supported by a sufficient consideration, will create a mortgage in equity, or a specific lien on the property intended to be mortgaged. As said in section 163, Jones on Mortgages:

"The meaning of the maxim, that equity looks upon things agreed to be done as actually performed, is that equity will treat the matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been done."

The doctrine is carried still further, and applied to property not yet in being at the time the contract is made. It is well settled that an agreement to charge, or to assign, or to give security upon, or to have property not yet in existence or in the ownership of the party making the contract, or property to be acquired by him in the future, although, with the exception of one particular species of things, it creates no legal estate or interest in the things

when they afterwards come into existence, or are acquired by the promisor, does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract. Pomeroy's Equity Jurisprudence, sec. 1236. Not only does the petition allege facts entitling plaintiff in error to an equitable lien against the property of the rail-way company, but it further charges that at the time of the execution of said bond contracts, and the advancement of said sums of money by the holders thereof to said railway company, said St. Louis Union Trust Company and said Fidelity Trust Company each had full knowledge of their execution, the fact of the advancement of money thereunder by the holders thereof, the terms and provisions of said contract, and of the facts and circumstances relating thereto, as well as the purpose for which said money so advanced was to be used, and that they counseled and advised said railway company to execute said contract and procure said sums thereunder. For the purposes of the demurrer the allegations of the petition must, of course, be taken as true.

No objection being made to the fact that the demurrers were oral, and not in writing, as contemplated by the statute, they will be treated as general demurrers only. The plaintiff in error's intervening petition stating a cause of action entitling it to an equitable lien, it was error for the trial court to sustain the demurrers, whether or not, in fact, the petitioner was entitled to all of the relief sought; for it has been repeatedly held by this court that a general demurrer addressed to the whole of a pleading should be overruled, if the pleading demur-

red to states facts entitling the party pleading to any of the relief claimed. *Cockrell v. Schmitt,* 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 739; *Beaver v. Oklahoma State Loan Co.,* 30 Okla. 585, 120 Pac. 943; *Hailey et. al. v. Bowman,* 41 Okla. 294, 137 Pac. 722; *C. E. Sharp Lbr. Co. v. Kansas Ice Co.,* 42 Okla. 689, 142 Pac. 1016. Whether, under the allegations of the intervening petition, plaintiff in error was entitled to a first and paramount lien on all of the property of the railway company, or on all of the additions or extensions, or equipment thereof, made or acquired subsequent to the execution of the deed of trust to the Fidelity Trust Company, are questions unnecessary to be here considered. Besides, the petition in error of the plaintiff in error only asks we order and direct that the demurrers be ordered overruled. Whether in fact the United States Fidelity & Guaranty Company has a first lien upon the property of the railway company, there being other creditors of said railway company asserting like or similar claims, is a question that can only be settled upon a hearing between all of the parties in the trial court. *Badgerow v. Manhattan Trust Co.* (C. C.) 64 Fed. 931. And while, from the petition, it appears that plaintiff in error has an equitable lien upon the railway property, yet whether such is the case may, and probably will, involve a trial of the facts, not only as between the plaintiff in error, the trustee, and the holder of the bonds, the St. Louis Union Trust Company, but other lien claimants as well. The question of what creditors have or are entitled to liens, or the extent and nature thereof, and the relative rights of the different lien claimants, is for the trial court to hear and determine upon a remand of the case.

For the reason stated, the judgment should be reversed and remanded, with instructions to the lower court to vacate and set aside the purported journal entry of October 31, 1913, and to overrule the respective demurrers of the defendants in error, Fidelity Trust Company, General Electric Company, and State of Oklahoma *ex rel.* J. D. Lankford, Bank Commissioner.

All the Justices concur.