REPUBLIC SUPPLY COMPANY, a Delaware corporation, Plaintiff,

v.

SUNSET DRILLING COMPANY, a Texas corporation, Defendant,

and

Ideco Division of Dresser Industries, Inc., a corporation, Intervenor.

Civ. No. 9834.

United States District Court
W. D. Oklahoma.

Jan. 16, 1967.

John H. Cantrell and Lee B. Thompson, of Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., for plaintiff.

Ben L. Burdick, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl., for intervenor.

## OPINION

BOHANON, District Judge.

In this civil action plaintiff, Republic Supply Company, sued Sunset Drilling Company, by Complaint filed September 5, 1962, seeking a money judgment against the defendant, Sunset, in excess of $300,000, and foreclosure of a chattel

mortgage securing the indebtedness covering certain personal property. Ideco Division of Dresser Industries, Inc., hereinafter referred to as "Ideco," was permitted to intervene, and filed its Petition in Intervention on November 13, 1962, claiming a prior lien on a portion of the property repossessed by the plaintiff. A controversy therefore exists between plaintiff, Republic, and Intervenor, Ideco, as to priority of their respective liens, with reference to the personal property which will later be fully described.

On November 13, 1962, a Judgment was entered in this Court for Republic against the defendant Sunset Drilling Company, in the sum of $299,193.77, together with interest thereon. In this Judgment, the respective rights between Republic and Ideco were specifically reserved, without prejudice. By agreement and stipulation between the parties, that is, Republic and Ideco, the personal property, which is the subject of this controversy, being 234 joints of oil well drill pipe, was sold for the sum of $31,-809.43, and this sum was placed in escrow with The Liberty National Bank & Trust Company of Oklahoma City, as escrow agent, to await the final judgment of this Court.

Republic and Ideco have entered into a lengthy partial stipulation of facts, which will not be set out herein verbatim; however, the essential facts necessary for a proper determination of this case are hereafter set out.

Sunset Drilling Company operated eight drilling rigs which were used in Texas and Oklahoma according to Sunset's needs and its contracts for drilling. We are here concerned primarily with Rig No. 4. Republic had a chattel mortgage covering Rig No. 4 and all of the equipment appertaining thereto, including drill pipe used in connection with said rig.

Republic, prior to the Judgment heretofore mentioned, repossessed Rig No. 4 and all appurtenances thereto, including all of the drill pipe then being used upon said rig, including the 234 joints in question. Republic and Ideco each claim a prior lien to the 234 joints of drill pipe. No other part or portion of the personal property is here involved. Republic's mortgage among other things provides:

"* * * all machinery, tools, pipe, fixtures, appliances, and other material, supplies and equipment, now forming a part of and used in connection with the foregoing property and equipment, or that may hereafter be acquired as additions to or replacements of the same, or any part or parts thereof, * * *"

It is agreed that Republic's chattel mortgage covering Rig No. 4 was timely and properly filed in all of the appropriate counties in the States of Texas and Oklahoma, as provided by the laws of these states.

On December 28, 1961, Ideco made a written offer to sell to Sunset Drilling Company of Longview, Texas, a new, complete drilling rig, including motors, pumps, draw works, et cetera, together with 15,000 feet of new 4½ inch drill pipe. This offer was accepted by Sunset Drilling Company on December 29, 1961. The total purchase price agreed upon was $431,340.19. As a part of the offer and acceptance, which is important for a proper determination of this case, it provides:

"Sunset Drilling Company will execute a chattel mortgage covering the equipment simultaneously with the delivery of the equipment to secure the payment of the sales price of the equipment."

On March 14, 1962, Sunset Drilling Company made, executed and delivered to Ideco its promissory note and purchase money chattel mortgage which was dated February 20, 1962, in the sum of $394,726.60. This purchase money mortgage covered the new drill pipe sold by Ideco to Sunset Drilling Company. The mortgage was recorded in Gregg County,

Texas, on March 16, 1962. No other security, except the property described in said mortgage, was taken by Ideco to secure the note.

Republic's chattel mortgage covering Rig No. 4 was filed in Cleveland County, Oklahoma, on April 21, 1961. Ideco's mortgage was filed in Cleveland County, Oklahoma, on August 10, 1962. On July 29, 1963, according to the stipulation of the parties, and the Court so finds, the amount due upon Ideco's note and mortgage was $221,767.97, plus interest and attorneys' fees. Ideco, on or about February 1, 1962, agreed to and did permit Sunset Drilling Company to move the drill pipe in question from Texas to Oklahoma, for use in Oklahoma, but did not know until about one week later that the pipe was to be moved to and used in Cleveland County, Oklahoma. The drill pipe covered by Ideco's mortgage was placed by Sunset Drilling Company in use on Rig No. 4 in Cleveland County, Oklahoma, on February 22, 1962. The old drill pipe belonging to and then being used on said Rig No. 4, which was specifically covered by Republic's mortgage, was removed therefrom and "laid down" on the ground, and soon thereafter moved by Sunset Drilling Company to Longview, Texas. The new drill pipe, covered by the Ideco mortgage, was used on Rig No. 4 to complete the drilling of the Cleveland County well and was with said rig at the time it was surrendered by Sunset to Republic. The Court finds that the drill pipe upon which Republic had a mortgage and which was removed to Texas was used in Texas by Sunset Drilling Company for the drilling of certain wells within the state of Texas. One John H. Roberson, an employee of the plaintiff, knew that the drill pipe covered by Republic's mortgage was removed from Rig. No. 4. Mr. Roberson did not notify his superiors that the new drill pipe had been brought in and the old drill pipe had been taken away. The officers of Republic did not learn until about September 18, 1962, that the ex-change had been made, and received this information from an officer of the Ideco by telephone, at which time an officer of Ideco advised an officer of Republic that Ideco had a first lien on the drill pipe which it had sold to Sunset, and that Republic had no claim thereto. Republic actually moved the drilling unit and the drill pipe from Cleveland County, Oklahoma, to Oklahoma City, Oklahoma County, Oklahoma, on September 23, 24, 25, and 26, 1962. At the time of the repossession by Republic it repossessed 52 joints of the old drill pipe covered by its mortgage, and the 234 joints of new drill pipe covered by Ideco's mortgage.

The Court finds from all of the stipulations, documents, and the evidence in this case, that the drilling of a well in Cleveland County, Oklahoma, where Rig No. 4 was being used, is much harder drilling than that in areas of Texas where the old drill pipe was later used by Sunset Drilling Company, and this was the reason for exchanging the drill pipe. Sunset was experiencing breakdowns on its Rig No. 4 in Cleveland County, Oklahoma, due to the worn condition of the drill pipe then on Rig No. 4, covered by Republic's mortgage. And it was determined by Sunset to transfer a part of the new drill pipe purchased from Ideco to the Oklahoma location to complete the well there.

The Court finds from all of the facts in evidence that it is a customary practice among drilling contractors in the oil fields to move certain equipment, specifically drill pipe, from one location or one rig to another, depending upon the drilling conditions existing and the condition of the drill pipe. This was done in this case to meet the drilling requirements of Sunset in completing the well then being drilled by it in Cleveland County, Oklahoma.

The Court finds, as above stated, that 234 joints of the new drill pipe, under mortgage to Ideco, was placed in use in connection with Rig No. 4. However,

in this connection, the Court further finds that this transfer of drill pipe was not to be permanent, but was made only for the purpose of completing the well in Cleveland County, Oklahoma. The removal and use was intended to be temporary only, and was not intended by the parties to be added to the drilling rig as a permanent replacement of the old drill pipe upon which Republic had a mortgage. After foreclosure there is due and owing intervenor Ideco upon its mortgage the approximate sum of $241,-767.97, so it follows that at the time Republic took possession of the drill pipe in question Sunset had no equity in such pipe. Therefore, and assuming arguendo, that there was an actual substitution or replacement of Republic's drill pipe on Rig No. 4, as contemplated by its mortgage, then Republic's mortgage would only cover the equity of Sunset in the substituted drill pipe.

■ The general rule is stated in 86 A.L.R.2d 1154, as follows:

"Where the owner of real property, or of both real and personal property, in mortgaging the same, includes a clause expressly covering personalty after-acquired by him, and thereafter he purchases, conditionally or otherwise, personalty coming within the clause, the principle which applies almost without exception is that the *mortgagee under such clause can take no greater interest than the mortgagor himself obtains in the purchase.*

"If, however, the sale to the mortgagor antedates the mortgage, though delivery of the personalty is made subsequently, or if after the personalty is delivered the mortgagee advances mortgage funds on the strength of an apparent ownership of it in the mortgagor, and without notice of the rights of the seller, *or if an advance of mortgage funds is otherwise so made as to be deemed to modify the rights of the seller,* the case is distinguished and to be decided on its particular facts.

"Under filing and recording statutes in any form ordinarily drawn, the failure of the seller or conditional seller to file or record the sales contract or 'lease,' so-called, or to file or record a mortgage on the personalty, taken back by him to secure the price, and obtained as a part of the transaction of sale, does not in usual circumstances, according to the view ordinarily taken, render the seller's title or lien, so bargained for, subordinate to the after-acquired-property clause of an antecedent mortgage given by the purchaser, since within the meaning of such statutes as almost invariably construed, one claiming under the antecedent mortgage clause is not a creditor, encumbrancer, purchaser, or third person, or within any other class, for whom the statutory protection is provided."

The greater number of Courts in the United States follow the above rule, and in the annotation there is cited the case of Union National Bank of Bartlesville v. Leidecker Tool Company, 72 Okl. 121, 178 P. 690. One Mitchell executed a mortgage upon a drilling rig and accessories to the bank. This mortgage had the usual clause wherein the mortgage covered any and all increase and all other personal property of like kind which the mortgagor might thereafter in any way acquire as additional security. Mitchell purchased from Leidecker Tool Company other property of like character and as a part of the contract to purchase agreed to execute a note and mortgage to secure the purchase price. Execution of the note and mortgage was delayed for some time thereafter, as in the case at bar. The question before the Court was whether the bank's mortgage, with the after-acquired-property clause, was superior to the mortgage of Leidecker Tool Company. The Leidecker mortgage was not filed of record. The trial Court

held that the Leidecker mortgage had priority, citing 42 O.S. 1961, § 8, which is still in effect:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case, the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

The Court then went on to say as follows:

"Construing this statute, it has been held in a number of cases that a mortgage upon property to be thereafter acquired by the mortgagor is valid, and the lien created thereby attaches to such property as soon as the same is acquired by the person executing the mortgage. Payne vs. McCormick Harvesting Machine Company, 11 Okl. 318, 66 P. 287; Garrison vs. Street and Harper Furniture and Carpet Company, 21 Okl. 643, 97 P. 978. But the lien only attaches to the extent of the interest acquired by the mortgagor. Such is the language of the statute. When Mitchell purchased the property of the Leidecker Tool Company it was a part of the agreement of purchase that a mortgage should be executed back to secure the purchase price, and this agreement was sufficient in equity to create an equitable lien upon the property when acquired and is treated in equity as a mortgage upon the property, for the reason that equity will consider as done that which by agreement is to be done, and such an agreement is valid and enforceable as between the parties. U. S. Fidelity & Guaranty Company vs. Fidelity Trust Company, et al., 49 Okl. 398, 153 P. 195.

"It is not a correct statement of the law to say that an 'after-acquired property clause' in a mortgage displaces all junior liens upon such property. The purpose of the rule is to promote justice, and not to serve as an instrument of injustice, and where property comes into the mortgagor's hands, subject to a mortgage or other lien, the 'after-acquired property clause' in the prior mortgage will not displace them, but will only attach to the interest acquired by the mortgagor, and if the property is subject to a lien for the purchase money, this lien will have priority. The sale by the Leidecker Tool Company and the agreement to give the mortgage back were concurrent and were one and the same transaction, and the equitable lien arising therefrom is equal in point of time with the agreement to execute the mortgage. The Union National Bank was not prejudiced in any way by the purchase of the property, and its security was not diminished or affected in any way, unless perhaps it were enhanced by the lien it acquired upon the property, subject to the lien of the Leidecker Tool Company. The Union National Bank was not a purchaser or an encumbrancer for value, and did not alter its position to its prejudice in any way after Mitchell acquired the property. If the property had never been acquired by Mitchell, its position would have remained the same, and for these reasons it is generally held that a mortgage with an 'after-acquired property clause' attaches to the 'after-acquired property,' subject to all liens and equities against it at the time of the acquisition."

This is also the law of the State of Texas. See First National Bank of Wichita Falls v. First National Bank of Chico, Tex.Civ.App., 285 S.W.2d 286 (Tex.), wherein it is stated:

"[W]e think that although a mortgage may be valid upon after-acquired property, it does not cover any greater interest than the property the mortgagor acquires."

In Thurmond v. International Harvester Company, Tex.Civ.App., 166 S.W. 2d 742 the Court states:

" 'A mortgage given to cover after-acquired property covers such property only in the condition in which it comes into the hands of the mortgagor. If that property is already subject to mortgages or other liens at that time, the general mortgage does not displace them although they may be junior to it in point of time. It attaches only to such interest as the mortgagor acquires. If he purchases property and gives a mortgage for the purchase • money, the bill of sale which he receives and the mortgage which he gives are regarded as one transaction, and the prior mortgage cannot displace such mortgage for the purchase money. * * * ' "

The latest expression of the Supreme Court of Oklahoma touching the subject of this controversy is Mid-Continent Supply Company, a corporation v. Harmon, an individual, dba Don Harmon Pipe and Supply Company, Okl., 394 P.2d 476. The case was decided February 18, 1964. In this case Mid-Continent Supply Company brought an action in replevin against Don Harmon, doing business as Don Harmon Pipe and Supply Company, to recover possession of a quantity of 4½ inch drill pipe which plaintiff Mid-Continent Supply claims to be covered under its chattel mortgage, under the after-acquired property provision. Pursuant to the replevin writ the Sheriff took possession of 132 joints of pipe. Defendant Harmon claims a subsequent purchase price mortgage upon the property and contends that his lien is superior to the chattel mortgage lien of Mid-Continent. The trial Court found the defendant had a valid equitable lien upon the pipe and rendered judgment in favor of the defendant Harmon, holding that his lien was superior to that of the chattel mortgage lien of Mid-Continent. Mid-Continent's mortgage from the mortgagor covered oil drilling equipment, including considerable drill pipe located in McClain County, Oklahoma, where the mortgagor was operating, and the mortgage was duly filed in that county. The mortgage had a provision whereby property after-acquired by the mortgagor, and indebtedness to plaintiff for future sales of supplies and equipment to mortgagor, was covered by the mortgage.

Later, in August, 1960, the mortgagor was in need of drill pipe to continue drilling operations, but had no funds to pay cash for the same. Mid-Continent refused to grant further credit to mortgagor for the purchase of such drill pipe. On August 25, 1960, the defendant Harmon sold the mortgagor 202 joints of 4½ inch used drill pipe for the sum of $12,021.18 under an agreement whereby defendant Harmon would arrange for mortgagor to borrow from The Liberty National Bank and Trust Company the money mortgagor needed to pay for the pipe. The mortgagor executed a note and chattel mortgage to the bank covering the drill pipe in the sum of $9,405 dated September 8, 1960, and acknowledged September 10. The loan was consummated and the proceeds paid to the defendant Harmon September 12, 1960. Harmon had made the arrangement with the bank and the loan was completed only on condition that he endorse the note, which he did. At the time of the transaction the mortgagor paid in cash the sum of $2,600 to be applied upon the purchase price. The chattel mortgage to the bank was never filed for record in McClain County.

In March, 1961, the mortgagor told both plaintiff and defendant to pick up all of the mortgaged property as he could make no further payments, and on the morning of March 23 plaintiff's employees and trucks went to the well in McClain County for that purpose, and the defendant arrived shortly thereafter for the same purpose, and after identifying 132 joints of square shouldered drill pipe as being covered by the bank's mortgage, hauled the same to Oklahoma

City. The following day the plaintiff, after discovering the bank's mortgage was not filed in McClain County, filed this action in replevin. Mortgagor had made some payments on the bank note. Defendant had paid $1,349.62 on the note prior to the replevin action and paid the balance of the note and interest constituting a total payment by defendant of $6,263.90, for which it was granted an equitable lien, superior to the lien of plaintiff.

It was the contention of the plaintiff Mid-Continent that its chattel mortgage with an after-acquired property clause constitutes a lien upon the property that is superior to the unfiled chattel mortgage of the bank, and the defendant Harmon's sale of the pipe to mortgagor was an unconditional sale that resulted in a present transfer of the title to the mortgagor. It was agreed that the defendant in being subrogated to the rights of the bank would have no greater rights than the bank.

The Court stated that the after-acquired property clause in the plaintiff's mortgage is controlled by Title 42 O.S. 1961, § 8, heretofore quoted. The Court then quoted with approval 86 A.L.R.2d 1152, and the annotation, supra, and further stated that under these authorities it appears that the Oklahoma Statute, 42 O.S.1961, § 8, supra, is in accordance with general law; the Court then quoted with approval Union National Bank of Bartlesville v. Leidecker Tool Company, supra, and specifically said at page 479 of the Opinion:

"This court, in construing the above Sec. 8, held that the lien of the antecedent mortgage with the after-acquired property clause attached at the time of the acquisition only to the extent of the interest acquired by the mortgagor; that the sale and the agreement to give the mortgage back were concurrent and were one and the same transaction; that the bank was not a purchaser or encumbrancer for value; and that it was generally held

that a mortgage with an 'after-acquired property clause' attaches to the 'after-acquired property' subject to all liens and equities against it at the time of its acquisition".

The Court, at page 480 of 394 P.2d, rejected the plaintiff's contention that the unrecorded mortgage to the bank was void as against the plaintiff as a subsequent mortgagee, for value, without notice, plaintiff relying upon the filing statute, 46 Okl.Stat.1961, § 57.

■■ The plaintiff in this case contends that it has altered its position to its prejudice in reliance upon Sunset's placing the pipe mortgaged to Ideco on Rig No. 4, and the removal of pipe covered by its mortgage to Texas. The Court, from a review of all of the evidence and the pleadings, stipulations, and other documents in the file, finds that the Republic is not a purchaser or encumbrancer for value of the 234 joints of drill pipe, and has not in any wise altered its position to its prejudice. In answer to interrogatories, Republic first had notice with reference to the new drill pipe being used on Rig No. 4 by Sunset on or about September 18, 1962, after the pipe of Republic had been removed by Sunset to Texas for use on rigs there. Republic did not learn that Ideco's pipe was on drilling Rig No. 4 and could not have altered or changed its position in reliance thereon. There was no new consideration flowing from Republic to Sunset which would place Republic in the position of an encumbrancer for value. Republic did not at any time lose its lien on the drill pipe upon which it had a mortgage, although it was moved by Sunset to Texas for use in that state. The record further shows that the plaintiff Republic made no effort to trace and locate its drill pipe in Texas and to there repossess the same. Perhaps it should be better to state that the evidence does not show that Republic exercised diligence in following the drill pipe upon which it actually had a mortgage. The pipe belonging to Sunset and mortgaged to Republic which was re-

moved to Texas was done by Sunset and not by the intervenor Ideco. Sunset breached its contract with Republic in many ways, but Ideco cannot be held to answer for such breaches.

██ The plaintiff finally contends that Ideco is estopped from claiming the 234 joints of pipe which were placed on Rig No. 4 by Sunset Drilling Company. It is fundamental that in order to create an estoppel it is necessary that the one asserting it must have been misled to his prejudice. There is nothing in this record to indicate that Ideco, at any time or in any way, misled the plaintiff Republic, and therefore plaintiff's claim that an estoppel exists is without merit.

If Republic's lien or mortgage attached to the Ideco pipe, it did so only to the amount and extent of Sunset's interest in the pipe. The defendant Sunset made no payments to Ideco on the note and mortgage in question, and it is agreed that there is now a deficiency of over $200,000 after foreclosure. Sunset had no equity in the pipe, and Republic therefore gained no equity or interest in the pipe through Sunset.

Inasmuch as the Court finds and holds that Republic was not an encumbrancer for value and in no wise prejudiced by the transaction that took place in this case, the recording acts of Oklahoma are not applicable.

If Republic has been damaged by the loss of its drill pipe, it is due to Republic's lack of diligence in allowing its security to be removed from Rig No. 4, and failing to follow up and repossess the pipe removed to Texas by Sunset after it knew of the removal, together with losses for breach of contract by Sunset.

From what has been said, it follows that Ideco Division of Dresser Industries, Inc., a corporation, intervenor, is entitled to judgment and is entitled to the funds held in escrow by The Liberty National Bank and Trust Company of Oklahoma City, together with any interest earned and subject to the terms of the escrow agreement.

No attorney's fee will be allowed on either party.